KEVIN LOU[1] & others[2] *vs.* OTIS ELEVATOR COMPANY.

No. 09-P-632.

Worcester. February 12, 2010. - September 3, 2010.

Present: KANTROWITZ, GREEN, & MEADE, JJ.

*Practice, Civil,* Instructions to jury, Objection, Interest. *Interest. Negligence,* Manufacturer, Escalator. *Trademark. Damages,* Interest. *Judgment,* Interest. *Conflict of Laws.*

The defendant in a civil action did not waive a claim of error with regard to a particular jury instruction, where the defendant made repeated objections to the instruction as well as a formal repetition of that objection at a conference convened by the judge for the specific purpose of recording the parties' respective objections to the charge. [574-576]

In the circumstances of a civil action, the defendant did not waive an objection concerning the choice of law on the issue of prejudgment interest by failing to raise any question concerning the availability of prejudgment interest until after the jury returned their verdict. [576-578]

In a products liability action, there was no error in the trial judge's instruction to the jury, in which he stated, in accordance with Restatement (Third) of Torts: Products Liability § 14 (1998) and comment d thereto, that a nonseller trademark licensor who participates substantially in the design, manufacture, or distribution of the licensee's products may be held liable under Massachusetts law as an apparent manufacturer; further, the instruction did not violate the statutory limitations on liability under Article 2 of the Uniform Commercial Code as adopted in Massachusetts. [578-583]

In a products liability action seeking damages for injuries suffered by Massachusetts plaintiffs involved in an escalator accident in China, the judge correctly awarded interest on the judgment in accordance with G. L. c. 231, § 6B, rather than in accordance with Chinese law, where Massachusetts had a more significant relationship to the occurrence and the parties, and where, given that the defendant's liability was determined under Massachusetts law, any policy judgment inherent in the Chinese law, which does not provide for prejudgment interest, was not implicated. [583-588]

CIVIL ACTION commenced in the Superior Court Department on February 8, 2001.

[1]By his mother and next friend, Beilin Chen.
[2]Jidong Lou and Beilin Chen.

The case was tried before *James R. Lemire*, J.

*Rory FitzPatrick* for the defendant.

*Christopher E. Mullady* (*Jeffrey S. Raphaelson* with him) for the plaintiffs.

GREEN, J. In October 1998, while traveling with his parents to visit his grandparents in the People's Republic of China, then-four year old Kevin Lou (a resident of Worcester County) was injured after catching his hand between the skirt panel and treads of an escalator in the Changzhou Tianyuan Department Store. The escalator was manufactured and sold by China Tianjin Otis Elevator Company, Ltd. (CTOEC), under license from the defendant, Otis Elevator Company (Otis). Kevin and his parents sought damages against Otis in a suit filed in the Superior Court, and after a lengthy trial, a jury returned a verdict awarding $3.35 million in damages; judgment entered thereafter in that amount, plus prejudgment interest in the amount of $3.3 million.[3] Among the issues raised by the defendant on appeal is a question of first impression: does the Restatement (Third) of Torts: Products Liability § 14 (1998) (Third Restatement) and, specifically, comment d thereto, reflect the law of Massachusetts?[4] We conclude that the trial judge correctly instructed the jury in accordance with § 14, comment d, and discern no merit in the defendant's separate claim that the judge erred in awarding prejudgment interest. We accordingly affirm the judgment.

*Background.* We summarize the facts the jury could have found.

---

[3]Kevin (by his mother and next friend) sought damages for breach of warranty, while his parents sought damages for loss of consortium. The special verdict slip awarded $2.85 million to Kevin and $250,000 to each of his parents.

[4]The Third Restatement § 14 provides as follows:

> "One engaged in the business of selling or otherwise distributing products who sells or distributes as its own a product manufactured by another is subject to the same liability as though the seller or distributor were the product's manufacturer."

Comment d to § 14 includes the following additional explanation:

> "Trademark licensors are liable for harm caused by defective products distributed under the licensor's trademark or logo when they participate substantially in the design, manufacture, or distribution of the licensee's products. In these circumstances they are treated as sellers of the products bearing their trademarks."

While descending an Otis E510 escalator with his grandmother in the Changzhou Tianyuan Department Store, Kevin's hand became trapped between the skirt panel and step tread of the escalator. As a result, Kevin was dragged a considerable distance down the escalator; his hand was almost completely severed at the mid-palm, and he has suffered a permanent thirty-one percent whole-body impairment.[5]

Otis is incorporated in New Jersey and has its principal place of business in Farmington, Connecticut. CTOEC is a joint venture formed in 1984 among Otis, Tianjin Elevator Company, and China International Trust & Investment Corporation, directed toward the manufacture in the People's Republic of China of elevators and escalators pursuant to Otis design standards and bearing the Otis trademark. Shortly after forming the joint venture, Otis entered into a trademark license agreement (trademark agreement) and a technical cooperation agreement (technical agreement) with CTOEC. Under the trademark agreement, Otis licensed to CTOEC the right to use the Otis trademark within China. Under the technical agreement, Otis agreed to furnish to CTOEC "Otis' Know-How," defined as: "(a) engineering and product design drawings, data, and information; (b) process, production, installation, maintenance, testing, and inspection methods; (c) quality standards; (d) factory and general management methods; and (e) any other data, documents, and information owned and furnished" to CTOEC by Otis. A "Technical Annex" appended to the technical agreement specified a broad range of technical and managerial support that Otis would provide to CTOEC in support of CTOEC's manufacture of elevators and escalators bearing the Otis trademark, including renovation of the Tianjin factory facility, modernization of factory production and management methods, and detailed technical specifications for products manufactured under the agreement. By amendment to the technical agreement in 1994, Otis added the E510 escalator to the list of product technology it agreed to furnish to CTOEC under that agreement. Key components specified for the E510 escalator were manufactured and supplied by Otis GmbH, a wholly-owned subsidiary of Otis incorporated in Germany. Otis

---

[5]It took approximately one hour to free Kevin from the escalator. The rescue effort was videotaped by a local television station.

assigned management personnel to the CTOEC factory, including individuals responsible for management of escalator production.[6] The escalator that caused Kevin's injuries was manufactured by CTOEC, pursuant to the trademark agreement and the technical agreement. It prominently bore the Otis trademark, embossed in metal on the comb plates at the top and bottom of the escalator, and the escalator bore no other trade name or mark.

*Discussion.* 1. *Waiver.* Before addressing the merits of the defendant's two claims of error, we must consider the plaintiffs' contention that Otis waived them both. Under Mass.R.Civ.P. 51(b), 365 Mass. 816 (1974), "[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." The plaintiffs direct us to the fact that, during the charge conference, Otis submitted proposed instructions which included instruction under comment d to § 14 of the Third Restatement. On the subject of prejudgment interest, the plaintiffs observe that Otis did not object to the substance of the judge's instruction on compensatory damages, and raised no claim concerning prejudgment interest until filing its motion to amend the judgment.

As we have observed, the trial was lengthy: it began on November 5, 2007, and concluded on December 20 of that year. At the close of the plaintiffs' evidence, Otis moved for a directed verdict, based on its contention that Otis (which did not manufacture the escalator in question) could not be held liable without evidence that Otis was a seller at any point in the distribution chain; according to Otis, the fact that it was not a seller necessarily excluded it from the "apparent manufacturer doctrine" described in § 400 of the Restatement (Second) of Torts (1965) (Second Restatement).[7]

The charge conference involved several lengthy discussions

---

[6]Among such management personnel was a vice-president of operations assigned by Otis to CTOEC, as of 1998, as "Director, Manufacturing and Supply Management" of Tianjin Otis, with the directive that "the Tianjin Otis factory managers will report directly to [him]."

[7]Prior to trial, Otis had moved, unsuccessfully, for summary judgment on the same basis. On each occasion, Otis acknowledged the portion of comment d to § 14 of the Third Restatement that extends "apparent manufacturer

among the trial judge and the parties, over the span of one week, concerning how the jury should be instructed. Both parties initially asked the judge to instruct the jury under Chinese law, but presented sharply different versions of how Chinese law on liability should be described. The trial judge concluded that he was unable to determine applicable Chinese law with confidence, and informed the parties that he would instruct the jury under Massachusetts law. See Restatement (Second) of Conflicts of Law § 6(g) (1971).[8] The judge then invited the parties to submit proposed instructions under Massachusetts law. The proposed instructions submitted by Otis included instruction on the plaintiffs' claim that it could be held liable as an "apparent manufacturer." The instruction was principally directed to the law on parent and subsidiary corporations and the requisites necessary to pierce the corporate veil, but also included language from a portion of the Third Restatement § 14 comment d.

At the continuation of the charge conference thereafter, Otis expressed its view that application of the apparent manufacturer doctrine to it, on the facts of this case, would constitute an unwarranted piercing of the separate corporate identities between it and CTOEC, and sought to excise from the jury charge any instruction suggesting that Otis could be held liable as an apparent manufacturer. The plaintiffs disagreed. The trial judge attempted to reconcile the parties' disagreement, acknowledged their respective positions, and stated his intention to instruct the jury on the apparent manufacturer doctrine. The judge advised the parties that their objections were noted, and that his instructions would incorporate portions of the language submitted by each of the parties. At that point, Otis indicated that, to the extent that the judge had decided, despite Otis's objection, to instruct the jury that Otis could be found liable as an apparent manufacturer, the wording that the judge intended to employ in his instruction on § 14 comment d was acceptable.

---

status" to trademark licensors who "participate substantially in the design, manufacture, or distribution of the licensee's products," see note 4, *supra*, but argued that that provision does not reflect Massachusetts law.

[8]Neither party assigns error to the decision by the trial judge to instruct the jury pursuant to Massachusetts law on the issue of liability.

Following the charge to the jury,[9] but before the jury retired to deliberate, the judge convened a conference for the purpose of placing the parties' objections formally on the record. Otis renewed its objection to the judge's instruction under the apparent manufacturer doctrine.

We are satisfied that the repeated objections by Otis to instruction under comment d to § 14, and particularly its formal repetition of that objection at the conference convened by the judge for the specific purpose of recording the parties' respective objections to the charge, were sufficient to satisfy the purpose of Mass.R.Civ.P. 51, and to preserve its rights on appeal.[10] See *Rotkiewicz* v. *Sadowsky*, 431 Mass. 748, 751-752 (2000).

There is likewise no merit to the plaintiffs' contention that Otis waived any objection to the assessment of prejudgment

---

[9]Pertinent to the issues on appeal, the judge charged the jury on the apparent manufacturer doctrine as follows:

> "[W]hen a corporation puts out as its own product an item that was in fact manufactured by another company, that corporation is subject to the same liability as though it were the product's actual sole manufacturer. This is sometimes referred to as the apparent manufacturer doctrine. Essentially, when a corporation authorizes a licensee to mark a product with its name or trademark, that corporation is considered to have put out that product as its own when, one, the use of the corporation's name or mark on the licensee's product makes it appear that the corporation is a manufacturer. And two, the corporation participated substantially in either the design, the manufacture, or the distribution of the licensee's product. In those circumstances, the trademark owner is treated as a manufacturer and seller of the products bearing its mark. Substantial participation means participation and some importance in the design, manufacture, or distribution of the products bearing the corporation's mark as opposed to participation in merely minor, incidental, or trivial respects."

[10]We note that, as expressed after the judge administered the charge, Otis objected that by omitting the first paragraph of comment d to § 14 (which precludes liability for trademark licensors who do not participate substantially in product design or manufacture), the judge's instruction improperly emphasized the portion of comment d under which trademark licensors may be held liable based on substantial participation in product design, manufacture, or distribution, and deprived the jury of the proper context. However, as we have observed, at an earlier point in the charge conference Otis had expressed its satisfaction with the form of the judge's proposed instruction under comment d (while reserving its objection to inclusion of comment d in the instruction). Otis understandably has not pressed on appeal any claim that the omission of the first portion of comment d was error.

interest by agreeing that the case should be submitted to the jury under Massachusetts law on damages. During the charge conference, the parties appear to have agreed that the laws of China and Massachusetts are congruent on the issue of the measure of damages. Without waiving its contention that Chinese law should apply, Otis then agreed that it would not object to the proposed instruction on damages, which was based on Massachusetts law, and that it could be given to the jury "as though" it were Chinese law.[11] As expressed to the jury, the instruction on damages made no reference to either jurisdiction. Though Otis did not raise any question concerning the availability of prejudgment interest until after the jury returned their verdict, there was no reason to address the question during the charge conference as the issue did not bear on the jury function in determining compensatory damages.[12] A postjudgment motion in fact appears to be a rather typical procedural vehicle to raise a question concerning the choice of law on an issue of prejudgment interest. See, e.g., *Salvi* v. *Suffolk County Sheriff's Dept.,* 67 Mass. App. Ct. 596, 598 (2006); *DeSantis* v. *Commonwealth Energy Sys.,* 68 Mass. App. Ct. 759, 771 (2007). See also *Jasty* v. *Wright Med. Technology, Inc.,* 528 F.3d 28, 39 n.15 (1st Cir. 2008) (rejecting argument that assertion of prejudgment interest

---

[11]Otis's agreement that the jury could be instructed in accordance with Massachusetts law "as though" it were Chinese law served to confuse rather then clarify matters. As discussed below, in light of the parties' apparent agreement that Massachusetts and Chinese law are congruent on the issue of damages, there was no conflict of laws on that issue and instruction under Massachusetts law (as the law of the forum) was accordingly appropriate. See *Cohen* v. *McDonnell Douglas Corp.,* 389 Mass. 327, 332 n.7 (1983) ("[T]he usual first step in applying conflict of law principles is to ascertain whether there is a conflict among the laws of the various States involved"). To the extent that Otis sought to suggest that the jury were being instructed under Chinese, rather than Massachusetts, law on damages, and thereby to preserve any objection to instruction under Massachusetts law on that issue, its objection was without merit.

[12]We reject the plaintiffs' contention that, by reason of the unavailability of prejudgment interest under Chinese law, any instruction specifically directed to Chinese law should have directed the jury to include an element of damages relating to the time value of money; under both Massachusetts and Chinese law the jury's function is the same: to assess the loss suffered by the plaintiffs as of the time of trial. In any event, the plaintiffs made no such argument during the charge conference, at the time they agreed that the laws of Massachusetts and China are congruent on damages.

claim for the first time in postjudgment motion waived the claim).[13] Though (as we shall discuss *infra*) we conclude that Massachusetts law should govern the issue of prejudgment interest, we conclude that Otis has adequately preserved its right to consideration of the issue on its merits.

2. *Apparent manufacturer doctrine.* Otis does not dispute that Massachusetts recognizes the "apparent manufacturer doctrine," as originally set forth under the Second Restatement § 400.[14] See, e.g., *Thornhill* v. *Carpenter-Morton Co.,* 220 Mass. 593, 596-597 (1915)[15]; *Fahey* v. *Rockwell Graphic Sys., Inc.,* 20 Mass. App. Ct. 642, 650 (1985). Instead, Otis contends that the instruction administered by the trial judge in the present case represents an unwarranted extension of the doctrine, inconsistent with Massachusetts law.

Section 14 of the Third Restatement is a direct lineal descendant of the rule expressed in Second Restatement § 400. See Third Restatement § 14 comment a. By its terms, § 400 did not transparently limit its scope to parties in the distribution or supply chain; instead of using such terms as "sells" or "supplies," it applies to persons or entities that "put out" a product. Comment

---

[13]Some courts have suggested that the choice of law on the issue of prejudgment interest should automatically be the same as the choice of law on the issue of compensatory damages. See, e.g., *Johnson* v. *Continental Airlines Corp.,* 964 F.2d 1059, 1064 (10th Cir. 1992); *La Plante* v. *American Honda Motor Co.,* 27 F.3d 731, 743 n.8 (1st Cir. 1994); *AE, Inc.* v. *Goodyear Tire & Rubber Co.,* 168 P.3d 507, 511 (Colo. 2007). Though the Restatement (Second) of Conflict of Laws § 171 prescribes that the two issues be analyzed using identical considerations, it appears to direct an independent analysis of each issue and does not dictate that the result of the analysis be the same in all circumstances. See § 171 comments a and c. In the unique circumstances of this case (in which the parties agreed that both jurisdictions are congruent on the law of damages, and Otis agreed that the defendant could be instructed in accordance with Massachusetts law "as though" it were Chinese law), we need not consider whether and in what circumstances it might be appropriate to apply the laws of different jurisdictions on the issues of compensatory damages and prejudgment interest.

[14]Section 400, captioned "Selling as Own Product Chattel Made by Another," states:

"One who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer."

[15]*Thornhill* v. *Carpenter-Morton Co., supra,* is cited in the Reporter's Notes to § 400 as the source of Illustration 1 to comment d of that section.

a to § 400 nonetheless appears to confine its scope to sellers in the distribution chain, stating that "[t]he words 'one who puts out a chattel' include anyone who supplies it to others for their own use or for the use of third persons, either by sale or lease or by gift or loan." However, comment d to § 400 supports a broader reading, insofar as it explains that an "actor puts out a chattel as his own product in two types of cases. The first is where the actor appears to be the manufacturer of the chattel. The second is where the chattel appears to have been made particularly for the actor." Comment d goes on to explain that "one puts out a chattel as his own product when he puts it out under his name or affixes to it his trade name or trademark. When such identification is referred to on the label as an indication of the quality or wholesomeness of the chattel, there is an added emphasis that the user can rely upon the reputation of the person so identified."

As observed by the Reporters' Note to § 14 of the Third Restatement, by the time of the Third Restatement a clear majority of jurisdictions (including Massachusetts) had recognized the rule stated in § 400 of the Second Restatement. Included among the cases developed under § 400 were many that considered application of the apparent manufacturer doctrine to nonsellers who were trademark licensors. Those cases, in turn, fall roughly into three categories. In one category are cases holding that a nonseller trademark licensor could be held liable as an apparent manufacturer if it exercised substantial control over the production of the product. See, e.g., *Torres* v. *Goodyear Tire & Rubber Co.*, 163 Ariz. 88, 94 (1990); *Kasel* v. *Remington Arms Co.*, 24 Cal. App. 3d 711, 723-725 (1972); *Connelly* v. *Uniroyal, Inc.*, 75 Ill. 2d 393, 410-411 (1979). The second category includes cases holding that a nonseller trademark licensor may be held liable as an apparent manufacturer, despite having had little or no participation in the design or manufacture of a product, by reason of the likelihood that buyers or users of the product would rely on the trademark as an assurance of the product's quality. See, e.g., *Carter* v. *Joseph Bancroft & Sons Co.*, 360 F. Supp. 1103, 1107 (E.D. Pa. 1973); *Brandimarti* v. *Caterpillar Tractor Co.*, 364 Pa. Super. 26, 35-37 (1987).[16] The third category stands in contrast to the second: cases which declined to

[16]We note that the Lanham Trademark Act of 1946, 15 U.S.C. § 1127

hold trademark licensors liable under the apparent manufacturer doctrine in circumstances in which they had little or no involvement in the design or manufacture of the product. See, e.g., *Burkert* v. *Petrol Plus of Naugatuck, Inc.*, 216 Conn. 65, 78-79 (1990); *Hebel* v. *Sherman Equip.*, 92 Ill. 2d 368 (1982); *Harrison* v. *B.F. Goodrich Co.*, 881 So. 2d 288, 291-292 (Miss. Ct. App. 2004); *Harrison* v. *ITT Corp.*, 198 A.D.2d 50 (N.Y. 1993); *Firestone Steel Prods. Co.* v. *Barajas*, 927 S.W. 2d 608, 616 (Tex. 1996).

Against that backdrop, the defendant's contention that § 400 of the Second Restatement limited application of the apparent manufacturer doctrine to sellers of a product seems at odds both with comment d to that section and with a substantial body of law developed prior to the issuance of the Third Restatement. Indeed, contrary to the defendant's contention that comment d to § 14 of the Third Restatement represents an unwarranted extension of the apparent manufacturer doctrine, comment d appears instead to have developed in response to those cases which held, under § 400 of the Second Restatement, that the doctrine could be applied to mere trademark licensors who had little or no involvement in product design or manufacture; it appears designed to resolve the inconsistency between the second and third categories described in the preceding paragraph, precluding application of the doctrine to those cases in which the licensor had limited or no involvement in the design or manufacture of the product, while leaving intact its application to cases in which the licensor had substantial participation in the design or manufacture.

The fact that comment d to § 14 of the Third Restatement represents a limitation, rather than an expansion, of the apparent manufacturer doctrine under § 400 does not, however, conclude our inquiry. "To the contrary, while this court often considers the various Restatements of the Law as prestigious sources of

---

(2006), imposes obligations on a trademark licensor to oversee quality control over users of a trademark, at risk of cancellation of the trademark. However, courts generally have declined to base liability as an apparent manufacturer solely on the requirements imposed by the Lanham Act. See, e.g., *Burkert* v. *Petrol Plus of Naugatuck, Inc.*, 216 Conn. 65, 75-76 (1990). See generally Franklyn, The Apparent Manufacturer Doctrine, Trademark Licensors and the Third Restatement of Torts, 49 Case W. Res. L. Rev. 671, 677-678 (1999).

potentially persuasive authority, we have never taken the position that this court should abdicate to the views of the American Law Institute as set forth in its various Restatements." *Bongaards* v. *Millen*, 440 Mass. 10, 29 (2003). Though as we have observed Massachusetts cases have previously applied the apparent manufacturer doctrine, no reported Massachusetts case has previously applied the doctrine to a person or entity outside the distribution chain (i.e., a nonseller). We are, however, persuaded by the reasoning in the cases from other jurisdictions which have done so. See *Back* v. *Wickes Corp.*, 375 Mass. 633, 640 (1978) ("[W]e find the strict liability cases of other jurisdictions to be a useful supplement to our own warranty case law"). For the reasons that follow, we accordingly conclude that there was no error in the instruction by the trial judge in the present case that a nonseller trademark licensor who participates substantially in the design, manufacture, or distribution of the licensee's products may be held liable under Massachusetts law as an apparent manufacturer.

We consider *Torres* v. *Goodyear Tire & Rubber Co.*, *supra*, particularly instructive. In *Torres*, the plaintiffs were injured in an accident allegedly caused by defects in a tire manufactured in Great Britain by a wholly-owned subsidiary of Goodyear Tire and Rubber Co., Inc. (Goodyear). Goodyear's ability to control the subsidiary's production of Goodyear tires was "pervasive," 163 Ariz. at 91, and the facts supported a finding that "Goodyear participated significantly in the design, manufacture, promotion, and sale that resulted in the product reaching the consumer." *Id.* at 94. After reviewing the various ways in which Goodyear had participated in the development, marketing, and distribution of Goodyear tires, and the various ways in which Goodyear benefited from that enterprise, the court rejected Goodyear's argument that it should not be held liable because its participation in the design, manufacture, and sale of Goodyear tires was accomplished entirely through wholly-owned subsidiaries:

> "The parent company owns the subsidiaries, designates their directors and officers, allocates the capital needed and used by the subsidiaries, and enjoys the profits made by them. Certainly the brain that so competently and

> thoroughly directs the entire enterprise must be liable for
> the acts of its appendages."

*Id.* at 94.

We agree. We also reject the defendant's contention that ap-
plication of the apparent manufacturer doctrine in these
circumstances ignores the separate corporate identities of the
various entities involved in the present case.[17] To the contrary, a
trademark licensor who is held liable by virtue of its substantial
participation in design, manufacture, or distribution of a product
is held liable as a result of its own role in placing a dangerous
product into the stream of commerce. See generally *Correia* v.
*Firestone Tire & Rubber Co.*, 388 Mass. 342, 355-356 (1983)
(explaining theory of strict liability for breach of warranty).

We likewise reject the defendant's contention that imposing
product liability on nonsellers violates the statutory limitations
on liability under Article 2 of the Uniform Commercial Code as
adopted in Massachusetts. See G. L. c. 106, § 2-103, inserted
by St. 1957, c. 765, § 1 (defining "seller" as one "who sells or
contracts to sell" goods). Massachusetts has long rejected con-
tractual privity as an essential element for recovery in a case
seeking recovery for damages suffered by reason of a defective
product. See *Back* v. *Wickes Corp.*, *supra* at 639-640. Under
G. L. c. 106, § 2-318, liability may be imposed not merely on
sellers but on manufacturers. We see no reason to construe the
term "manufacturer" as used in § 2-318 in such a manner as to
exclude entities which, by reason of substantial participation in
design or manufacture of a product, are recognized as apparent
manufacturers under the Restatement, simply by reason of the
fact that they have not also participated directly as sellers in the
chain of distribution.

The two cases on which the defendant places primary reli-
ance in urging a contrary conclusion are distinguishable. In
*Burkert* v. *Petrol Plus of Naugatuck, Inc.*, 216 Conn. 65, 68
(1990), the Connecticut Supreme Court refused to apply the

---

[17]We note that, at the defendant's request, the jury in the present case were
instructed that a "corporation is generally not liable for the acts of its subsidiary.
Common ownership of stock of two or more corporations together with com-
mon management standing alone will not give rise to liability on the part of
one corporation for the acts of another corporation or its employees."

apparent manufacturer doctrine to General Motors Corporation in circumstances in which its "role as a trademark licensor was unusually limited." In reaching its conclusion, the court went to considerable lengths to distinguish cases in which a trademark licensor had substantial involvement in the design, manufacture, or other activities which placed an item in the stream of commerce. See *id.* at 79-82. In *Iragorri* v. *United Technologies Corp.*, 285 F. Supp. 2d 230, 239-240 (D. Conn. 2003), vacated, in part, on other grounds by 314 F. Supp. 2d 110 (D. Conn. 2004), the Federal District Court for the District of Connecticut, relying on *Burkert, supra,* declined to impose liability on Otis under the apparent manufacturer doctrine. However, in opposing summary judgment, the plaintiff in *Iragorri* failed to submit any evidence that Otis had exerted control over the subsidiary that manufactured the elevator that caused the plaintiff's injuries; the court observed that the plaintiff offered no evidence, beyond the placement of the Otis name and trademark on the elevator, that "Otis was engaged in the actual manufacture, distribution, or marketing of the elevators, or that the Supply, Technical Assistance, and Licensing Agreements gave Otis a role in such matters." *Id.* at 237.[18] The evidence in the present case, in contrast to *Burkert* and *Iragorri, supra,* included ample evidence on which the jury could find that Otis participated substantially in the design or manufacture of the escalator.[19]

3. *Prejudgment interest.* Under Massachusetts law "an award of prejudgment interest is a substantive remedy." *Militello* v. *Ann & Grace, Inc.*, 411 Mass. 22, 26 n.4 (1991). Massachusetts generally follows a functional approach to resolving choice of law questions on substantive matters, eschewing reliance on any particular choice-of-law doctrine. See *Bushkin Assocs., Inc.* v. *Raytheon Co.*, 393 Mass. 622, 631 (1985). For examples of the functional approach applied to particular areas of law, see, e.g., *Pevoski* v. *Pevoski*, 371 Mass. 358, 359-361 (1976) (torts); *Choate, Hall & Stewart* v. *SCA Servs., Inc.*, 378 Mass. 535,

---

[18]A third case cited by Otis, *Affiliated FM Ins. Co.* v. *Trane Co.*, 831 F.2d 153, 155-156 (7th Cir. 1987), is inapposite, since it declined entirely to recognize the apparent manufacturer doctrine as the law of Wisconsin.

[19]Otis does not press a contrary contention on appeal, arguing instead simply that the apparent manufacturer doctrine does not apply to entities that participate substantially in design or manufacture, but do not sell.

540-542 (1979) (contracts); *Cosme* v. *Whitin Mach. Works, Inc.,* 417 Mass. 643, 646-650 (1994) (statute of repose); *New England Tel. & Tel. Co.* v. *Gourdeau Constr. Co.,* 419 Mass. 658, 664 (1995) (statute of limitations). Though we do not tie our analysis to any single doctrine, examination of our cases reveals that we often find useful guidance in the Restatement (Second) of Conflict of Laws.

As a first step in our analysis, we consider whether the choice between the laws of the involved jurisdictions will affect the legal result. See *Cohen* v. *McDonnell Douglas Corp.,* 389 Mass. 327, 332 n.7 (1983). In the present case the conflict appears to be clear: pursuant to G. L. c. 231, § 6B, Massachusetts directs the addition of prejudgment interest at a statutorily prescribed annual rate of twelve percent to an award of damages in a tort action, while Chinese law includes no provision for an award of prejudgment interest.[20]

We accordingly look to Restatement (Second) of Conflict of Laws § 171 comment c,[21] which in turn directs us to § 145.[22]

---

[20]According to the affidavit of Jacques deLisle submitted with the defendant's motion to amend the judgment, there is no statutory authority for an award of prejudgment interest in tort cases under Chinese law, and in the absence of such statutory authority judges are without authority to make such an award.

[21]Comment c to § 171 states as follows:

> "*Interest.* The law selected by application of the rule of § 145 determines whether the plaintiff can recover interest and, if so, at what rate for a period prior to the rendition of judgment as part of the damages for a tort."

[22]Restatement (Second) of Conflict of Laws § 145, entitled "The General Principle," provides:

> "(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

> "(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.

> "These contacts are to be evaluated according to their relative importance with respect to the particular issue."

"Section 145 of the Restatement provides the general principle 'applicable to all torts and to all issues in tort,' . . . and § 146 of the Restatement[23] provides a principle applicable in issues concerning causes of action involving personal injury" (footnote omitted). *Cosme* v. *Whitin Mach. Works, Inc., supra* at 646-647. "Each section requires that the relevant issue be examined in accordance with the principles stated in § 6 of the Restatement."[24] *Dasha* v. *Adelman*, 45 Mass. App. Ct. 418, 423 (1998).

We begin by examining the contacts that China and Massachusetts have with the parties and the occurrence giving rise to the present action. China is where the injury occurred and where the escalator was manufactured and put into use.[25] Massachusetts is where the plaintiffs are domiciled. The defendant

---

[23]Restatement (Second) of Conflict of Laws § 146, entitled "Personal Injuries," states:

> "In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied."

[24]Restatement (Second) of Conflict of Laws § 6, entitled "Choice-of-Law Principles," states:

> "(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

> "(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied."

Paragraph (1) of § 6 is inapplicable in the present case, as no Massachusetts statute governs choice of law on the issue of prejudgment interest.

[25]We cannot fix with the same precision the location of the conduct that caused the injury. The defendant is based in Connecticut, and much of the design for the escalator took place in Connecticut (or, at least, in places other than China). By the same token, Otis oversaw the manufacture of the escalator at CTOEC, see note 6, *supra* (and accompanying text), and its participation in such oversight plays a significant role in its status as an apparent manufacturer.

has its principal place of business in Connecticut, and does business in both Massachusetts and China.[26]

"In accordance with § 146 of the Restatement, the law of [China] (the [place] where the injury occurred) applies, unless Massachusetts has a more significant relationship to the occurrence and the parties under the principles stated in § 6. We, therefore, consider the factors listed in § 6 to decide if Massachusetts has a more significant relationship." *Dasha* v. *Adelman, supra* at 424. In so doing, we are mindful of the admonition in the applicable Restatement (Second) of Conflict of Laws sections, and particularly in § 145, to evaluate the prescribed factors according to their relative importance to the particular issue involved.[27]

The purpose of prejudgment interest under G. L. c. 231, § 6B, is "to compensate for the delay in the plaintiff's obtaining his money." *Bernier* v. *Boston Edison Co.*, 380 Mass. 372, 388 (1980).[28] Accordingly, the policy and purpose underlying the issue of prejudgment interest is one of compensation or loss distribution, rather than conduct regulation.[29] See generally

---

[26]Neither of the parties suggests that Connecticut law should apply to the issue of prejudgment interest.

[27]Comment d to § 145 explains that the law of a single jurisdiction is not necessarily to be applied to all issues in a particular case. See *Choate, Hall & Stewart* v. *SCA Servs., Inc.*, 378 Mass. at 542 ("Of course, there is nothing unusual about the laws of different States applying respectively to various phases of a single transaction or incident"). Comment d further observes that a State has an obvious interest in regulating the conduct of persons within its boundaries, so that the place where an injury occurs is of great significance in determining which law to apply on an issue implicating conduct regulation. An issue of immunity or compensation, by comparison, will place greater emphasis on the State in which the parties are domiciled.

[28]We note that courts in New Hampshire and Rhode Island both have suggested that substantially similar statutes authorizing prejudgment interest also serve to promote early settlement of cases. See *Pepin* v. *Beaulieu*, 102 N.H. 84, 89 (1959); *Isserlis* v. *Director of Pub. Works*, 111 R.I. 164, 166 (1973) (decided under an earlier version of the statute). To the extent such a purpose may lie behind our statute, Massachusetts would have the strongest interest in seeing that purpose realized in cases brought in the Massachusetts courts.

[29]Because the purpose of prejudgment interest is directed to loss distribution rather than conduct regulation, we place little or no significance on the interest China holds in deterring the manufacture and sale of defective equipment within its borders. Accordingly, as in *Dasha* v. *Adelman*, 45 Mass. App. Ct. at 424 n.14, we find no particular guidance in the factors set forth in Restatement (Second) of Conflict of Laws § 6 other than the relevant policies

Symeonides, The American Choice of Law Revolution: Past, Present and Future 123-140 (Martinus Nijhoff 2006). Though as we have observed Chinese law does not provide for an award of prejudgment interest, that posture appears to arise from a difference in the way it regards the nature of the relationship between the parties as of the time of suit, rather than a difference in its interest in, or concern with, seeing that victims of injuries caused by defective products are fully compensated for their losses.[30] According to the affidavit submitted on behalf of the defendant by Jacques deLisle, until an action in tort reaches judgment, the civil relationship between a plaintiff and a defendant remains "indeterminate and undetermined"; the defendant's liability, and consequent obligation to the plaintiff, accordingly does not arise until the entry of judgment, and the plaintiff's legal entitlement to damages correspondingly does not arise until that point. It is of course conceivable that the failure to recognize a tort plaintiff's entitlement to damages until the entry of judgment reflects a policy choice. But in the present case the defendant's liability was determined under Massachusetts law, so that any policy judgment inherent in the Chinese conception of the legal relationship between the defendant and the victim is not implicated. It accordingly is appropriate (consistent with Massachusetts law) to recognize the defendant's obligation to pay damages, and the plaintiffs' corresponding entitlement to receive them, as having accrued at the time of the complaint.

---

of the two competing jurisdictions. We note, however, that the basic policy underlying the particular field of products liability law, to which § 6(2)(e) would direct our attention, is to provide a basis for compensation of individuals injured by defective products. See Cosme v. *Whitin Mach. Works, Inc.*, 417 Mass. at 647-648.

We separately note that Article 146 of the General Principles of China's civil code expressly provides that "[i]f both parties are citizens of the same country or have established domicile in another country, the law of their own country or the country of domicile may be applied." However, under the Restatement (Second) of Conflict of Laws § 8 (entitled "Applicability of Choice-of-Law Rules of Another State [Renvoi]"), "[w]hen directed by its own choice-of-law rule to apply 'the law' of another state, the forum applies the local law of the other state" without regard to the choice of law rules of the other State, subject to exceptions not applicable in the present case.

[30]Though Chinese law does not provide for an award of prejudgment interest, the record contains nothing to suggest that Chinese law contains any express prohibition, so as to express a policy antagonistic to it.

Weighing the respective interests of China and Massachusetts on the issue of prejudgment interest, we conclude that Massachusetts has the stronger interest, and that the trial judge correctly awarded interest on the judgment in accordance with G. L. c. 231, § 6B.

*Conclusion.* For the foregoing reasons, we conclude that the judge correctly instructed the jury on Massachusetts law in accordance with Restatement (Third) of Torts: Products Liability § 14 comment d, and that he correctly applied Massachusetts law to the issue of the plaintiffs' entitlement to prejudgment interest on the jury award.

*Judgment affirmed.*