CONWAY vs. PLANET FITNESS HOLDINGS, LLC, 101 Mass. App. Ct. 89

 
 JAYNE CONWAY vs. PLANET FITNESS HOLDINGS, LLC, & others. [Note 1]

101 Mass. App. Ct. 89
 October 5, 2021 - May 27, 2022

Court Below: Superior Court, Essex County
Present: Vuono, Wolohojian, & Hershfang, JJ.

 

Conflict of Laws. Contract, Choice of law clause, Settlement agreement. Judgment, Interest. Damages, Interest, Remittitur, Fraud. Interest. Fraud. Practice, Civil, Interest, Special verdict, Instructions to jury. Waiver.

In a civil action tried in the Superior Court under New Hampshire law pursuant to a choice of law provision contained in the parties' employment separation and settlement agreement, in which the jury found for the plaintiff and awarded her damages after finding that the defendants had committed fraud and made negligent representations that induced her to settle a claim of wrongful termination, the judge erred in awarding interest on the judgment in accordance with New Hampshire law instead of Massachusetts law, where New Hampshire law did not apply to the calculation of prejudgment interest simply because it was applied to the plaintiff's claims at trial, and where, given that Massachusetts was the State with the greater interest at stake in light of its substantial relationship to the parties and events and its interest in seeing its injured citizen compensated, an analysis under the Restatement (Second) of Conflict of Laws supported the application of the Massachusetts prejudgment interest statute [94-99]; further, one of the defendants was not entitled to a new trial or remittitur, where the amount of the plaintiff's award, while high, was grounded in the undisputed evidence regarding the true value of her equity interest, where the judge remitted the proper amount of damages and consequently did not abuse his broad discretion, and where that defendant's argume

CIVIL ACTION commenced in the Superior Court Department on May 10, 2013.

 The case was tried before Jeffrey T. Karp, J., and motions for a new trial, judgment notwithstanding the verdict, or relief from

 Page 90 

 judgment, and for remittitur, filed on January 24, 2020, were heard by him. 

 Kenneth J. DeMoura for the plaintiff.

 Mark W. Batten for Planet Fitness Holdings, LLC, & others.

 Michael H. Darling for Michael Grondahl.

 VUONO, J. A jury in the Superior Court returned a verdict in favor of the plaintiff, Jayne Conway, and awarded her over $5 million in damages after finding that the defendants, Planet Fitness Holdings, LLC, Pla-Fit Franchise, LLC (together, Planet Fitness or the company), and various officers and directors of the company, had committed fraud and made negligent representations that induced her to settle a claim of wrongful termination. The case was decided under New Hampshire law pursuant to a choice of law provision contained in the parties' separation and settlement agreement (settlement agreement). The judge subsequently awarded interest on the judgment in accordance with New Hampshire law instead of in accordance with Massachusetts law as Conway had requested. Conway appeals and claims that the judge incorrectly calculated the award of prejudgment interest by applying New Hampshire law.

 In addition, one defendant, Michael Grondahl (Grondahl), a part owner and chief executive officer of Planet Fitness at the time of the events in question, filed a cross appeal challenging the jury's award of damages and certain rulings made by the judge posttrial. [Note 2]

 We conclude that in the circumstances of this case, prejudgment interest should be determined under Massachusetts law. Consequently, the portion of the second amended judgment related to prejudgment interest is vacated, and the case is remanded for the calculation of prejudgment interest in accordance with Massachusetts law. The second amended judgment is otherwise affirmed.

 Background. We summarize the facts the jury could have found, supplemented by facts found by the judge after a hearing on Conway's motion seeking an award of prejudgment interest. In April 2010, Conway accepted a position as chief financial officer of Planet Fitness, which owns and operates health clubs and sells health club franchises. Planet Fitness's principal offices were located in Newington, New Hampshire. With one exception, the individual defendants were residents of New Hampshire during

 Page 91 

 the events in question. [Note 3] Conway resided in Newton, Massachusetts when she started working for Planet Fitness, but she stayed in New Hampshire during the work week. [Note 4] 

 Conway received a master's degree from Harvard Business School and had a successful career before joining Planet Fitness. She was employed as the chief financial officer at Gulf Oil, LP, before accepting Planet Fitness's offer, and she took a significant pay cut in exchange for receiving an equity interest in the company, which had experienced recent growth and had attracted the attention of various investors. [Note 5] 

 For reasons that are not relevant here, Planet Fitness terminated Conway's employment in November 2011. Conway believed that she had been wrongfully terminated and hired an attorney in Massachusetts to assist her in asserting various claims against the defendants. Extensive but unsuccessful settlement negotiations ensued. One sticking point was the value of Conway's equity interest in the company. Planet Fitness maintained that the company was in decline and that Conway's interest was worthless. Grondahl, among others, encouraged Conway to settle. Additionally, in April 2012, Craig Benson, a former Governor of New Hampshire who was acting as an "informal advisor" to Planet Fitness, met with Conway at a restaurant in Newburyport and told her that the company was not financially sound and urged Conway to settle her claims. Ultimately, the parties agreed to engage a Massachusetts company, Delphi Valuation Advisors, Inc. (Delphi), to determine the value of Conway's equity interest.

 Thereafter, Delphi conducted an appraisal and prepared several draft reports. A final report was submitted to the parties in December 2012. As it turned out, the defendants had provided Delphi with misleading and incorrect information. These misrepresentations were made by the defendants from their offices in New Hampshire. Delphi received that information in Massachusetts, the reports were prepared in Massachusetts, and the reports were

 Page 92 

 reviewed by Conway in Massachusetts. [Note 6] 

 In reliance on the incorrect valuations contained in Delphi's final report, [Note 7] Conway followed the advice of her attorney, with whom she had multiple discussions in Massachusetts, and settled her claims against Planet Fitness for $500,000. [Note 8] The parties executed the settlement agreement, which contained the following choice of law provision: 

"This Agreement shall be governed by and construed in accordance with the laws of the State of New Hampshire, without regard to the conflicts of law principles thereof. The Parties agree to submit to the jurisdiction of the courts of the State of New Hampshire in connection with any dispute arising out of this Agreement." 

Conway signed the settlement agreement in Massachusetts.

 For the purposes of this appeal, it is not necessary to chronicle the extent of the defendants' deception. It suffices to note that within a few months of signing the settlement agreement, Conway learned that the defendants had concealed information regarding a highly profitable sale of a large portion (seventy-five percent) of the company to a private equity firm. This information was disclosed to Conway by an employee of Planet Fitness during a visit with Conway at her home in Massachusetts. Conway now realized that her equity interest in the company was worth far more than the amount stated in Delphi's final report, and she held the view that she would not have settled her claims for $500,000 had she known about the sale and the amount of the transaction.

 Conway then brought this action alleging, among other claims, fraud, negligent misrepresentation, and breach of the covenant of good faith and fair dealing. [Note 9] The jury, in answering special questions,

 Page 93 

 found that the defendants had committed fraud and made negligent representations and that their misconduct had induced Conway to enter into a settlement agreement for significantly less money than she would have accepted had she not been defrauded. The jury determined that Conway would have settled for $5.36 million and awarded her that amount in damages. The jury returned a verdict in favor of the defendants on Conway's claim of breach of the covenant of good faith and fair dealing.

 After the verdict, Conway filed a motion to approve the judgment under Mass. R. Civ. P. 58 (a) (2), as amended, 371 Mass. 908 (1977), [Note 10] and sought an award of prejudgment interest in accordance with the Massachusetts prejudgment interest statute, G. L. c. 231, § 6B. The defendants opposed the motion to the extent that Conway sought application of Massachusetts law to the calculation of prejudgment interest and asserted that the judge should apply New Hampshire law. The judge held a hearing and subsequently issued a detailed memorandum of decision and order allowing the motion to approve the judgment and denying Conway's request to apply the Massachusetts statute.

 In reaching his conclusion that prejudgment interest should be calculated under New Hampshire law, the judge conducted a choice of law analysis and determined that Massachusetts was the State with the most significant relationship to the parties and events in question. He also concluded that the purpose of the prejudgment interest statute, i.e., to compensate the plaintiff for the loss of use of her money, supported the application of the Massachusetts prejudgment interest statute. As we discuss in more detail below, the judge nevertheless decided that the choice of law provision in the settlement agreement required, as a matter of fairness, that he apply the New Hampshire prejudgment interest statute, and judgment entered accordingly. [Note 11] 

 The defendants then filed a motion for a new trial, for judgment notwithstanding the verdict or relief from judgment, and for remittitur. The motion was mostly denied, but the judge agreed that the damages award was against the weight of the evidence

 Page 94 

 and conditionally ordered a new trial on damages unless Conway agreed to accept a reduced award in the amount of $4.2 million. Conway accepted the remittitur, and a second amended judgment entered. This appeal and cross appeal followed. 

 Discussion. 1. Conway's appeal. Conway contends that the judge erred by applying New Hampshire law to determine the amount of prejudgment interest she was entitled to receive for two reasons. First, she argues that she is not bound by the choice of law provision contained in the settlement agreement because her claims against the defendants are based on tortious behavior that falls outside the scope of the provision. Second, she argues that Massachusetts has a more significant relationship to the parties and the underlying events than New Hampshire, and as a result, the application of the choice of law principles set forth in the Restatement (Second) Conflict of Laws (1971) (Restatement) dictate that prejudgment interest be calculated under Massachusetts law. We agree that the judge erred for both of these reasons.

 Before we address these two issues, we provide some necessary background. Prior to the start of trial, the judge directed Conway to choose between seeking rescission of the settlement agreement or accepting that she had settled with Planet Fitness and pursue her tort claims. Conway chose the latter option and requested that the case be decided under Massachusetts law because the claims on which she was proceeding to trial focused on the defendants' tortious conduct that occurred before the settlement agreement was executed. The judge viewed Conway's request to apply Massachusetts law as untimely and denied it. He noted that at various points throughout the proceedings Conway had agreed that New Hampshire law applied, and he believed she could not fairly change her position on the eve of trial. Conway then argued that despite the application of New Hampshire law to her tort claims, if the jury were to return a verdict in her favor, prejudgment interest on any award of damages should be calculated under Massachusetts law. The defendants objected, and the judge deferred ruling on the issue. [Note 12]

 Although the judge acknowledged that Conway reserved her right to seek an award of prejudgment interest under Massachusetts law, he concluded that Conway had effectively agreed to the 

 Page 95 

application of New Hampshire law to all substantive remedies, including prejudgment interest, because she decided to proceed under the settlement agreement at trial. According to the judge, this decision meant that Conway was bound by the settlement agreement's choice of law provision in all respects.

 The plain language of the choice of law provision does not support the judge's reasoning. The provision clearly states that it applies only to disputes arising out of the settlement agreement and not to claims, as here, that allege misleading and negligent conduct that induced the execution of the settlement agreement. Our cases have construed similar language as limiting the scope of a choice of law provision to disputes arising out of an agreement itself. See Kitner v. CTW Transport, Inc., 53 Mass. App. Ct. 741, 746 (2002) (characterizing nearly identical provision as "expressly self-limiting" and concluding it did not cover tortious conduct). See also Jacobson v. Mailboxes Etc. U.S.A., Inc., 419 Mass. 572, 578 (1995).

 Thus, based on the language of the choice of law provision, we question whether it was appropriate to apply New Hampshire law to Conway's claims at trial. Although this issue is not before us, we are not persuaded that the choice of law provision at issue here required the application of New Hampshire law to Conway's tort claims and, therefore, the judge's ruling that New Hampshire law should apply to the calculation of prejudgment interest simply because it was applied to Conway's claims at trial does not withstand scrutiny. Moreover, the judge's ruling ignores the fact that, despite any perceived concession regarding New Hampshire law, Conway explicitly asserted that prejudgment interest should be determined under Massachusetts law.

 In any event, the fact that New Hampshire's substantive law was followed in determining Conway's claims at trial does not in itself resolve the choice of law issue concerning prejudgment interest, and we now turn to that question. [Note 13]

 Under Massachusetts law, "an award of prejudgment interest is

 Page 96 

 a substantive remedy." Militello v. Ann & Grace, Inc., 411 Mass. 22, 26 n.4 (1991). "Massachusetts generally follows a functional approach to resolving choice of law questions on substantive matters, eschewing reliance on any particular choice-of-law doctrine. . . . Though we do not tie our analysis to any single doctrine, examination of our cases reveals that we often find useful guidance in the Restatement (Second) of Conflict of Laws." (Citations omitted.) Lou v. Otis Elevator Co., 77 Mass. App. Ct. 571, 583-584 (2010).

 The first step in our analysis is to determine "whether the choice between the laws of the involved jurisdictions will affect the legal result." Lou, 77 Mass. App. Ct. at 584, citing Cohen v. McDonnell Douglas Corp., 389 Mass. 327, 332 n.7 (1983). Here, the conflict is substantial. In Massachusetts, pursuant to G. L. c. 231, § 6B, prejudgment interest is prescribed at an annual rate of twelve percent to an award of damages in a tort action. [Note 14] In New Hampshire, pursuant to N.H. Rev. Stat. Ann. § 336:1(II), an award of prejudgment interest is calculated at a rate established annually by the State treasurer. [Note 15] Had the judge applied the Massachusetts prejudgment interest statute, Conway would have received $3,318,000 in prejudgment interest. Instead, under New Hampshire law, she was awarded $729,025.43.

 Page 97 

 "We accordingly look to Restatement (Second) of Conflict of Laws § 171 comment c, which in turn directs us to § 145" (footnote omitted). [Note 16], [Note 17] Lou, 77 Mass. App. Ct. at 584. Section 145 of the Restatement sets forth the general principle applicable to all torts and to all issues in tort, and § 148 of the Restatement concerns principles applicable to causes of action involving fraud and misrepresentation. [Note 18] Both sections require that the relevant issue be examined in light of the general conflict principles set forth in § 6 of the Restatement. [Note 19] Lou, supra at 585.

 We begin by reviewing the contacts that Massachusetts and New Hampshire had with the parties and the events giving rise to the present action. Conway's residency is a contact of particular significance. Conway resided in Massachusetts when she received the false information from the defendants. That the false statements were generated in New Hampshire is less consequential in view of the fact that the misinformation was communicated to Conway and Delphi in Massachusetts and was ultimately incorporated into reports prepared by Delphi in Massachusetts. In addition, Conway was visited in Massachusetts by a representative of Planet Fitness, who encouraged her to settle, she signed the settlement agreement in Massachusetts, and she first learned of the defendants' fraudulent conduct in Massachusetts. Most importantly, Conway relied on the false information in Massachusetts and, as the jury found, suffered a monetary loss in Massachusetts

 Page 99 

 as a result of the defendants' misconduct.

 Lastly, while it is true that Planet Fitness was located in New Hampshire and Conway worked there, the fraud and deceit that is at the heart of this case all occurred after Conway's employment was terminated. Although New Hampshire has some relevant contacts to the parties and events, those contacts are not sufficient to outweigh Massachusetts's substantial relationship with Conway and to the occurrences that led to her claims of fraud and negligent misrepresentation. Accordingly, because Massachusetts is the State with the greater interest at stake, an analysis under the Restatement supports the application of the Massachusetts prejudgment interest statute.

 Next, the purpose of the prejudgment interest statute, which is the focus of § 6 of the Restatement, is another factor that weighs in favor of the conclusion that the appropriate choice of law is that of Massachusetts. An award of prejudgment interest, like an award of damages, is "to compensate for the delay in the plaintiff's obtaining his money" (citation omitted). Lou, 77 Mass. App. Ct. at 586. "Accordingly, the policy and purpose underlying the issue of prejudgment interest is one of compensation or loss distribution, rather than conduct regulation." Id. We note that the purpose behind the New Hampshire prejudgment interest statute is the same. See Linteau v. Gauthier, 142 N.H. 460, 461 (1997) ("the legislative purpose in authorizing interest [was] to provide compensation for the loss of use of money damages" [quotation and citation omitted]). However, it stands to reason that the State in which the injured party resides, here Massachusetts, has the stronger interest in seeing its injured citizen compensated. Consequently, we conclude that prejudgment interest should be calculated under the Massachusetts statute.

 2. Grondahl's cross appeal. Grondahl asserts that he is entitled to a new trial because the jury either misunderstood or "plainly disregarded" the law governing Conway's claims. [Note 20] To support this argument, Grondahl points to the jury's award of damages, which he describes as far in excess of any amount supported by 

 Page 100 

the evidence, and to the verdicts, which he claims are inconsistent. He also argues that neither he nor the other defendants had a duty to disclose information, particularly information pertaining to the sale of a portion of the company, to Conway after she was fired and her membership interest in the company allegedly ended, and that Conway's counsel improperly argued otherwise in his closing argument. According to Grondahl, the prejudice created by counsel's improper closing argument on that issue was exacerbated by the judge's response to a question on the subject posed by the jury during their deliberations. Lastly, Grondahl proposes that if we are not persuaded to grant him a new trial, we should vacate the judge's order on remittitur because the evidence does not support an award of $4.7 million.

 Grondahl, together with the other defendants, raised the issue of excessive damages in support of their motion for a new trial and for remittitur. They argued, as Grondahl does here, that the damages award was against the weight of the evidence and reflected the jury's rejection of the law as explained by the judge.

 This argument is unavailing for the reasons articulated by the judge in his memorandum of decision and order denying the defendants' motion. Although the judge agreed with the defendants that the award of $5.36 million was not grounded in the evidence, he noted, and we agree, that the evidence supported a substantial award of damages. Conway testified that the value of her claim for wrongful termination prior to settlement was over $5 million, but, aside from claiming that she would not have settled for $500,000, Conway did not indicate how much she would have accepted in settlement had she known the true value of her equity interest. However, Conway's counsel addressed this issue in his closing argument and stated that Conway was not entitled to the full value of her claim but instead to the amount for which she would have settled, and proposed that the jury award her $4.7 million. [Note 21] This amount, while high, was grounded in the undisputed evidence regarding the true value of Conway's equity interest. [Note 22] Based on counsel's statement, the judge determined that justice required a remittitur, and he reduced the award to $4.7

 Page 101 

 million. [Note 23] Once Conway accepted the remittitur, the award of damages was in line with "the range of verdicts supported by the evidence." Clifton v. Massachusetts Bay Transp. Auth., 445 Mass. 611, 623 (2005). For the same reason, we also conclude that the judge remitted the proper amount of damages and consequently did not abuse his broad discretion. See id.

 Grondahl's next argument, that the verdicts were inconsistent and as such reflected a disregard for the judge's instructions, is not properly before us. "Where, as here, a jury returns a special verdict, an objection that verdicts on several counts are inconsistent with each other must be taken at the time when the verdicts are returned and before they are recorded, so that the trial judge has an opportunity to correct the error if there is one." Netherwood v. American Fed'n of State, County & Mun. Employees, Local 1725, 53 Mass. App. Ct. 11, 21 n.11 (2001). Here, there was no such objection, and the claim is waived.

 Grondahl's remaining arguments also are waived. There were numerous objections to closing remarks made by Conway's counsel, but none on the ground that counsel's remarks regarding the defendants' duty to provide certain information to Conway were misleading. Similarly, Grondahl did not object to the judge's additional instruction to the jury on this subject. During their deliberations, the jury asked a question regarding the duties Planet Fitness owed to Conway. [Note 24] A vigorous debate over the proper response ensued, but ultimately, Grondahl, through his counsel, agreed to the response as given. "The consequence of the failure properly to object at trial is to waive the issue on appeal." Hoffman v. Houghton Chem. Corp., 434 Mass. 624, 639 (2001).

 Conclusion. The portion of the second amended judgment related to prejudgment interest is vacated, and the matter is remanded for the calculation of prejudgment interest in accordance with G. L. c. 231, § 6B. The second amended judgment is otherwise affirmed.

 So ordered.

FOOTNOTES
[Note 1] Pla-Fit Franchise, LLC; Michael Grondahl, individually and as trustee of the Michael A. Grondahl Revocable Trust of 2006; Marc Grondahl, individually and as trustee of the Marc Grondahl Revocable Trust of 2006; Christopher Rondeau, individually and as trustee of the Christopher J. Rondeau Revocable Trust of 2006; and Richard Moore. 

[Note 2] The cross appeal by the other defendants was dismissed voluntarily with prejudice. 

[Note 3] Richard Moore, an officer who also served as Planet Fitness's attorney, was a resident of Massachusetts. 

[Note 4] Conway moved to Newburyport in the spring of 2011. 

[Note 5] Conway and Planet Fitness entered into various agreements, including an employment agreement, a restricted interest agreement, and an amended and restated limited liability company agreement. In accordance with these agreements, Conway received an equity interest in the company. All three agreements included a choice of law provision stating that they were governed by New Hampshire law. 

[Note 6] There was evidence that Conway received and reviewed the final Delphi report while she was working in New York or on a flight to Europe. However, even if some review occurred outside of Massachusetts, there is no dispute that Conway's reliance on the report occurred in Massachusetts. 

[Note 7] The final report was reviewed by Richard Moore, who did not correct the misinformation. 

[Note 8] Conway accepted $198,000 for what she believed amounted to her equity interest. The remaining amount was related to other claims. 

[Note 9] The complaint also alleged claims of violation of the New Hampshire Uniform Securities Act and breach of contract with respect to various employment contracts, including the restricted interest agreement and the amended and restated limited liability company agreement, but Conway proceeded to trial only on her claims of fraud, negligent misrepresentation, and breach of the covenant of good faith and fair dealing. 

[Note 10] Because the verdict consisted of answers to special questions, the judge was required to approve the form of the judgment pursuant to rule 58 (a) (2). 

[Note 11] After the judgment entered, Conway filed a motion to amend the judgment to include an award of costs. The motion was allowed without objection, and an amended judgment entered. 

[Note 12] The judge stated, "[W]e don't need to decide that at this point," and addressing Conway's attorney, he stated, "I think . . . you're wise to raise it because - to just get out in front of it. But my sense is that it can wait until after the verdict. And certainly, just remind me." 

[Note 13] We are not persuaded by Grondahl's argument that the judge's decision to apply New Hampshire law to the calculation of prejudgment interest was based on the law of the case doctrine, for which the standard of review is abuse of discretion. See Conservation Comm'n of Falmouth v. Pacheco, 49 Mass. App. Ct. 737, 744 n.8 (2000) (judge's declining to reopen jurisdictional question "could be affirmed as well within [his or] her discretion under the 'law of the case' doctrine"). Here, the judge clearly applied traditional choice of law principles in reaching his conclusion. Consequently, the standard of review is de novo. See Oxford Global Resources, LLC v. Hernandez, 480 Mass. 462, 467 (2018) ("We review a court's 'interpretation of the meaning of a term in a contract,' a question of law, de novo" [citation omitted]). 

[Note 14] General Laws c. 231, § 6B, states as follows: 

"In any action in which a verdict is rendered or a finding made or an order for judgment made for pecuniary damages for personal injuries to the plaintiff or for consequential damages, or for damage to property, there shall be added by the clerk of court to the amount of damages interest thereon at the rate of twelve per cent per annum from the date of commencement of the action even though such interest brings the amount of the verdict or finding beyond the maximum liability imposed by law."

[Note 15] New Hampshire Rev. Stat. Ann. § 336:1(II) states as follows: 

"The annual simple rate of interest on judgments, including prejudgment interest, shall be a rate determined by the state treasurer as the prevailing discount rate of interest on 26-week United States Treasury bills at the last auction thereof preceding the last day of September in each year, plus 2 percentage points, rounded to the nearest tenth of a percentage point. On or before the first day of December in each year, the state treasurer shall determine the rate and transmit it to the director of the administrative office of the courts. As established, the rate shall be in effect beginning the first day of the following January through the last day of December in each year."

[Note 16] Comment c to § 171 states as follows: "Interest. The law selected by application of the rule of § 145 determines whether the plaintiff can recover interest and, if so, at what rate for a period prior to the rendition of judgment as part of the damages for a tort." 

[Note 17] Restatement § 145, entitled "The General Principle," provides: 

"(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

"(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: 

"(a) the place where the injury occurred, 

"(b) the place where the conduct causing the injury occurred, 

"(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and 

"(d) the place where the relationship, if any, between the parties is centered.

"These contacts are to be evaluated according to their relative importance with respect to the particular issue."

[Note 18] Restatement § 148, entitled "Fraud and Misrepresentation," provides: 

"(1) When the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations and when the plaintiff's action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

"(2) When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties: 

"(a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,

"(b) the place where the plaintiff received the representations,

"(c) the place where the defendant made the representations,

"(d) the domicil, residence, nationality, place of incorporation and place of business of the parties,

"(e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and

"(f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant."

[Note 19] Restatement § 6, entitled "Choice-of-Law Principles," states: 

"(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

"(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include 

"(a) the needs of the interstate and international systems,

"(b) the relevant policies of the forum, 

"(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, 

"(d) the protection of justified expectations, 

"(e) the basic policies underlying the particular field of law, 

"(f) certainty, predictability and uniformity of result, and 

"(g) ease in the determination and application of the law to be applied."

Paragraph (1) of § 6 is inapplicable in the present case, as no Massachusetts statute governs choice of law on the issue of prejudgment interest.

[Note 20] Grondahl also appeals from the denial of the defendants' motion for a new trial; however, he makes no separate argument in his brief regarding the judge's decision on the motion. In any event, given our conclusion that Grondahl is not entitled to a new trial, it follows that the judge did not abuse his discretion in denying the motion. See Hammell v. Shooshanian Eng'g Assocs., Inc., 73 Mass. App. Ct. 634, 638 (2009). 

[Note 21] The defendants maintained that Conway would have settled for an amount between $787,000 and $1.36 million. 

[Note 22] Planet Fitness represented to Conway that the postclosing total equity valuation was $315 million when, in fact, it was closer to $500 million. 

[Note 23] The award was reduced by another $500,000 based on the payment the defendants had already made to Conway in connection with the settlement agreement. 

[Note 24] Specifically, the jury questioned whether Conway was "entitled to documents about the company if they were produced while she still had ownership in the company." 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.