NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-573                                        Appeals Court

RESOLUTE MANAGEMENT INC. & another[1] vs.  TRANSATLANTIC
REINSURANCE COMPANY & another.[2]

No. 14-P-573.

Suffolk.     November 13, 2014. - April 29, 2015.

Present:  Green, Wolohojian, & Blake, JJ.

Practice, Civil, Motion to dismiss.  Consumer Protection Act,
     Businessman's claim.  Contract, Reinsurance agreement,
     Interference with contractual relations.  Conflict of Laws.

Civil action commenced in the Superior Court Department on
April 30, 2013.

A motion to dismiss was heard by Thomas P. Billings, J.

Bryce L. Friedman, of New York (Kevin O'Connor with him)
for the plaintiffs.
     John N. Thomas, of New York (Ben T. Clements with him) for
the defendants.

GREEN, J.  The plaintiffs appeal from a judgment of

dismissal entered in Superior Court following the allowance of

_____

[1] National Indemnity Company.

[2] Alleghany Corporation.

the defendants' motion to dismiss the plaintiffs' complaint pursuant to Mass.R.Civ.P. 12(b)(6), 365 Mass. 754 (1974).[3] The complaint asserted claims of tortious interference with contractual relations and violation of G. L. c. 93A. We conclude that the judge correctly dismissed the claims of Resolute Management Inc. (Resolute) for tortious interference with contractual relations as Resolute is not a party to the contracts at issue. However, we conclude that the allegations of the complaint do not establish as a matter of law that the plaintiffs cannot maintain a cause of action under G. L. c. 93A, or whether New York or Massachusetts law should apply to the claims of National Indemnity Company (National) for tortious interference with contractual relations. We accordingly reverse so much of the judgment as dismisses the plaintiffs' c. 93A claims and National's claims for tortious interference with contractual relations.

Background. We summarize the facts alleged in the plaintiffs' complaint which, for purposes of our review of the defendants' motion to dismiss, we accept as true, construing all

_____

[3] The judge did not address the allegation by Alleghany Corporation (Alleghany), under Mass.R.Civ.P. 12(b)(2), 365 Mass. 754 (1974), that the complaint should be dismissed for lack of personal jurisdiction. Alleghany does not press that ground in this appeal as an alternative basis to support dismissal of the claims against it.

reasonable inferences from those facts in the plaintiffs' favor. See Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008).

National, a Nebraska corporation with a principal place of business in Nebraska, is an eligible surplus lines insurer and reinsurer in the Commonwealth whose business includes issuing reinsurance contracts and contracting to manage asbestos-related personal injury claims for Massachusetts-based insurers. National's business, in part, is to enter contracts with other insurers' clients, pursuant to which it (or Resolute, as National's agent) resolves claims against those other insurers and collects reinsurance.

In 2001, National entered into an administrative service agreement (ASA I) with two major insurers, pursuant to which National was appointed to adjust, handle, agree, settle, pay, compromise, or repudiate certain asbestos-related claims on behalf of a number of Massachusetts-based insurers, and also was appointed to collect reinsurance recoveries related to those claims from Transatlantic Reinsurance Company (Transatlantic), and other insurers. In 2011, National entered into similar agreements with five other major insurers (ASA II) and, in 2012, with another (ASA III). In each of the ASAs, Resolute, a Delaware corporation with a principal place of business in Massachusetts, was authorized as agent to carry out National's duties under the ASA (or ASAs).

Transatlantic is a reinsurer licensed to do business in Massachusetts, which it does on a regular basis. In March, 2010, after decades of being a subsidiary of American International Group, Transatlantic became an independent, publicly traded company. Because of a lack of operational flexibility and other factors (including anticipated adverse developments in so-called "legacy"[4] asbestos claims), Transatlantic found it difficult to compete with National in the insurance and reinsurance markets. National and Resolute were so efficient in resolving claims against their insurer clients and in promptly collecting reinsurance that Transatlantic's business model was damaged and its business threatened. Despite a weak market, Transatlantic began to look for a merger partner.

In August, 2011, National offered to purchase Transatlantic for approximately fifty-two dollars per share, all cash, which was below Transatlantic's stated book value. Transatlantic rejected the offer, but in 2012 allowed itself to be acquired by Alleghany Corporation (Alleghany) (which was looking to enter the reinsurance market) for approximately $59.79 per share.

The merger of Alleghany and Transatlantic got off to a rocky start, in part because Transatlantic continued to be

---

[4] Legacy claims arise from actions conducted decades earlier, "leaving an unwanted 'legacy'" in the form of actual or alleged injury. Pitre, Jr., Legacy Litigation & Act 312 of 2006, 20 Tul. Envtl. L.J. 347, 348 (2007).

plagued by its asbestos-related claims. Transatlantic sought to commute (i.e., pay another entity to assume responsibility for a risk) its asbestos-related reinsurance obligations to a group of clients of National and Resolute, but the price Transatlantic was willing to pay was significantly less than the amount of its exposure to those clients, and neither National nor Resolute was willing to yield to Transatlantic's demands.

For years prior to the merger between Transatlantic and Alleghany, Resolute promptly billed Transatlantic for reinsurance benefits under ASA I, and Transatlantic regularly reviewed and audited information and data it received from National's insurer-clients for compliance with the terms of ASA I. Prior to its merger with Alleghany, Transatlantic never raised a question about the amounts it was billed by Resolute, and timely paid substantial sums to Resolute under ASA I. Similarly, from mid-2011 through 2012, Transatlantic routinely and timely paid bills submitted by Resolute pursuant to ASA II. However, after Alleghany purchased Transatlantic, Transatlantic unjustifiably refused to pay invoices Resolute submitted pursuant to all three ASAs. Specifically (as alleged in the complaint), Alleghany instructed Transatlantic to rid itself of its problematic legacy asbestos liabilities and to punish Resolute and National for failing to accept Transatlantic's proposed terms to commute those claims. By withholding

reinsurance payments due to Resolute on behalf of National, Alleghany and Transatlantic sought to harm National's and Resolute's relationships with their clients, to impede National's ability to perform its contractual obligations to those clients, and to force National to agree to commute Transatlantic's obligations at the "below-market and irrational price" that Alleghany and Transatlantic demanded.

This litigation followed.  By complaint filed April 30, 2013, against Transatlantic and Alleghany, Resolute and National brought claims of tortious interference with contractual relations (ASA I, ASA II, and ASA III), and violation of G. L. c. 93A, § 11.  A judge allowed the defendants' motion to dismiss the complaint, and the plaintiffs appealed.

Discussion.  For independent but similar reasons, central to determination of the viability of the plaintiffs' complaint is an assessment of the relationship to the Commonwealth of the facts and circumstances giving rise to their claims.  The plaintiffs' claims for tortious interference with contractual relations are viable (at least for pleading purposes) if they are governed by Massachusetts law, but not if they are governed by New York law.[5]  Similarly, the plaintiffs are entitled to

_____

[5] Under New York law, to prevail on a claim of tortious interference with contractual relations a plaintiff must establish, among other things, that the defendant's interference caused an actual breach of a contract between the plaintiff and

maintain a claim pursuant to G. L. c. 93A, § 11, only if the statute applies to the unfair or deceptive acts alleged.  In both instances, the required determination turns principally on the relationship of the parties and their activities to the Commonwealth, as we shall discuss infra.

1.  Applicability of G. L. c. 93A.  "Under c. 93A, § 11, it is [the defendants'] burden to demonstrate that 'the center of gravity of the circumstances that [gave] rise to the claim' were not 'primarily and substantially within the Commonwealth.'"  Skyhook Wireless, Inc. v. Google Inc., 86 Mass. App. Ct. 611, 622 (2014), quoting from Kuwaiti Danish Computer Co. v. Digital Equip. Corp., 438 Mass. 459, 470, 473 (2003) (Kuwaiti Danish).  As the Supreme Judicial Court observed in Kuwaiti Danish, supra at 473, § 11 appears to contemplate that such an assessment would occur following, and based upon, findings of fact made by a judge.

As a threshold matter, we note that the defendants have cited no appellate case in which the center of gravity of a § 11

_____

a third party.  See, e.g., Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 424 (1996).  By contrast, Massachusetts has adopted § 766A of the Restatement (Second) of Torts (1979), see Shafir v. Steele, 431 Mass. 365, 369 (2000), under which a plaintiff need not establish an actual breach if he can show that the defendant's interference either prevented the plaintiff from performing the contract or caused his performance of the contract to be more expensive or burdensome.  In the present case, the plaintiffs do not allege that an actual breach of ASA I, ASA II, or ASA III has occurred.

claim was determined adversely to a plaintiff upon a motion to dismiss (as compared to a motion for summary judgment or after trial), and we are aware of none.[6]  In light of the multiple factors to be applied, and the nuanced and flexible approach to assessing them, as articulated in Kuwaiti Danish, see ibid., we find it difficult to imagine how such an assessment might be made on the basis of the allegations of the complaint alone -- at least where, as in the present case, the loss occurred in Massachusetts, and substantial numbers of the claims upon which the bills Resolute submitted to Transatlantic were based related

---

[6] In support of their argument, the defendants cite several unpublished decisions of the Superior Court dismissing a c. 93A complaint on a motion to dismiss.  To the contrary is a line of published opinions of the United States District Court for the District of Massachusetts.  See Workgroup Technology Corp. v. MGM Grand Hotel, LLC, 246 F. Supp. 2d 102, 118 (D. Mass. 2003) (center of gravity decision must be based on factual findings not made on motion to dismiss); Berklee College of Music, Inc. v. Music Indus. Educators, Inc., 733 F. Supp. 2d 204, 213 (D. Mass. 2010) ("absent some extraordinary pleading concession by a claimant" challenge to c. 93A claim "cannot be resolved on Rule 12 motions").  See also In Re TJX Cos. Retail Security Breach Litigation, 524 F. Supp. 2d 83, 93 (D. Mass. 2007) (allegations of complaint adequate to survive motion to dismiss), aff'd in part by 564 F.3d 489 (1st Cir. 2009); Hertz Corp. v. Enterprise Rent-A-Car Co., 557 F. Supp. 2d 185, 197 (D. Mass. 2008) (reserving ruling on motion to dismiss c. 93A claim pending completion of trial on jury claims).  Contrast Iantosca v. Benistar Admin Servs., Inc., 738 F. Supp. 2d 212, 220 (D. Mass. 2010) (dismissing c. 93A complaint without prejudice where all deceptive acts alleged in complaint [other than commencement of litigation] occurred in Pennsylvania).

either to Massachusetts insurers or claimants.[7] Though the defendants assert that many of the activities upon which the plaintiffs' claims are based occurred outside the Commonwealth, the complaint includes no allegation or other indication to support the assertion.[8]

To be sure, in light of the defendants' principal physical presence in New York (of which the judge took judicial notice, see note 8, supra), it is entirely possible that the principal communications between the defendants concerning their determination to refuse further payments to Resolute took place outside the Commonwealth. Less influential, in our view, is the fact that certain of the insurers with which National contracted under the ASAs were headquartered outside Massachusetts -- at

---

[7] We also note that paragraph 10 of the complaint alleges that "Transatlantic's tortious conduct at issuer [sic] here occurred substantially in Massachusetts," paragraph 11 alleges that "Alleghany's tortious conduct at issue here occurred substantially in Massachusetts," and paragraph 58 alleges that the "unfair and deceptive acts [by the defendants] took place primarily and substantially within the Commonwealth of Massachusetts."

[8] In his order allowing the defendants' motion, the judge took judicial notice that Transatlantic is a New York corporation headquartered in New York, that Alleghany is a Delaware corporation headquartered in New York, and that neither defendant maintains a place of business in Massachusetts. He also took judicial notice of the headquarters locations of the insurers that were counterparties to National under the ASAs, observing that several are headquartered outside Massachusetts. However, the complaint includes no detailed information about where the defendants' allegedly tortious or deceptive acts occurred, other than the general allegation that they occurred in Massachusetts. See note 7, supra.

least if, as alleged in the complaint, the claims National (or Resolute acting as National's agent) sought to adjust for them were based in Massachusetts.  In any event, we are aware of no rule requiring a § 11 plaintiff to plead facts with particularity sufficient to withstand a claim by the defendant that the center of gravity of his claim is not within the Commonwealth.  In our view, the allegations of the complaint are sufficient to warrant discovery and development of a factual record adequate to allow a judge to conduct that assessment.  In the present procedural posture of the case, it was error to dismiss the plaintiffs' claims under G. L. c. 93A, § 11.

2.  Tortious interference with contractual relations.  A similar (though not identical) concern shapes our view of the judge's conclusion that New York law should be applied to the plaintiffs' claims of tortious interference with contractual relations.  "Massachusetts generally follows a functional approach to resolving choice of law questions on substantive matters, eschewing reliance on any particular choice-of-law doctrine."  Lou v. Otis Elevator Co., 77 Mass. App. Ct. 571, 583 (2010).  We look to the Restatement (Second) of Conflict of Laws for guidance; it in turn articulates several factors for consideration.  See id. at 584-585 & n.22.  As a general principle, the "rights and liabilities of the parties with respect to an issue in tort are determined by the local law of

the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6."  Restatement (Second) of Conflict of Laws § 145 (1971).[9]

For reasons quite similar to those discussed supra, the allegations of the complaint, standing alone, are inadequate to determine as a matter of law whether New York or Massachusetts law should be applied.  The complaint does not state where the ASAs were entered into or, except in the most general terms, describe the rights and obligations of the parties to them.  Nor does the complaint describe with particularity the claims that National undertook to resolve, including how many of those

---

[9] Restatement (Second) of Conflict of Laws § 6 (1971), in turn, states:

"(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

"(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied."

Paragraph (1) of § 6 is inapplicable, as no Massachusetts statute governs choice of law on a claim for tortious interference with contractual relations.

claims have a substantial connection to Massachusetts.  Again, though it appears that many of the parties (if not their activities relevant to the complaint) are headquartered outside the Commonwealth, it is impossible for us to conclude as a matter of law on the basis of the complaint alone that New York (or any particular State, for that matter) has the most significant contacts with, and greatest interest in, the plaintiffs' claims of tortious interference with the ASAs.  As in our c. 93A discussion, discovery and development of a factual record are required to conduct the functional assessment envisioned by the Restatement.  We accordingly must reverse the judgment insofar as it dismissed National's claim of tortious interference with contractual relations based on the premise that it failed to allege an element of that claim that is essential under New York law but not under Massachusetts law.  See note 5, supra.

However, even without resolution of the choice of law question we conclude that the judge correctly dismissed Resolute's claims because it was not a party to any of the contracts with which the defendants allegedly interfered, and it does not otherwise claim a cognizable legal interest on its own behalf in their enforcement.[10]  Resolute thus is unable to

---

[10] Resolute's suggestion that it may maintain its claims because it acts as National's agent with respect to the ASAs is

demonstrate the first of the elements described in <u>Harrison</u> v.
<u>NetCentric Corp</u>., 433 Mass. 465, 476 (2001): "that [it] had a
contract with a third party."[11]

 <u>Conclusion</u>. So much of the judgment as dismisses the
plaintiffs' claims under G. L. c. 93A, § 11, and National's
claims for tortious interference with contractual relations
under ASA I, ASA II, and ASA III is reversed, and those claims
are remanded for further proceedings consistent with this
opinion. In all other respects, the judgment is affirmed.

<u>So ordered</u>.

---

unavailing. Resolute's rights and obligations as National's
agent all relate to enforcement of the ASAs on National's
behalf. Resolute claims no right to enforce the contracts for
its own benefit. In the present case, we need not consider
whether an intended or third-party beneficiary of a contract
might have standing to claim tortious interference with a
contract to which it is not a party. See, e.g., <u>CSY Liquidating
Corp</u>. v. <u>Harris Trust & Sav. Bank</u>, 162 F.3d 929, 932-933 (7th
Cir. 1998).

[11] We reject Resolute's alternative contention that the
complaint should be construed broadly to assert a claim for
tortious interference with advantageous relations; put simply,
the several counts of the complaint speak specifically and
exclusively of interference with contractual relations. In any
event, we note that Resolute does not allege that the defendants
"knowingly induced a breaking of the [advantageous]
relationship" between it and any third party, a required element
of the alternative claim of tortious interference with
advantageous relations. <u>Blackstone</u> v. <u>Cashman</u>, 448 Mass. 255,
260 (2007).