SUPERIOR COURT 
 
 MOSHE YANAI, RACHEL YANAI, AND MICHAL INTERNATIONAL INVESTMENT LLC v. ZACK KEINAN, INDIVIDUALLY AND AS GENERAL PARTNER OF SCINTILLA HOLDINGS, LTD.; SCINTILLA HOLDINGS, LTD., AS GENERAL PARTNER OF SCINTILLA FUND, L.P.; AND BOAZ TOSHAV

 
 Docket:
 2584CV00565-BLS2
 
 
 Dates:
 May 22, 2025
 
 
 Present:
 Kenneth W. Salinger Justice of the Superior Court
 
 
 County:
 SUFFOLK
 

 
 Keywords:
 DECISION AND ORDER ON MOTION BY ZACK KEINAN, SCINTILLA HOLDINGS, LTD., AND SCINTILLA FUND, L.P. TO DISMISS ALL CLAIMS AGAINST THEM, AND ON PLAINTIFFS’ MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS
 
 

 Scintilla Fund, L.P. (the “Fund”) made a series of loans to Michal International Investment LLC (“MII”). The outstanding balance is more than $33 million. The loan terms were set out in several Facilities Agreements and later modified in a Side Letter. Moshe Yanai personally guaranteed repayment. In addition, Moshe and Rachel Yanai pledged their membership interests in MII as security. After a series of defaults, the Fund, Yanai, MII, and an MII affiliate entered into an Omnibus Agreement that further altered the terms of the loans and included a conditional waiver of any defaults that were known to the Fund.
Soon thereafter, the Fund—acting through Zack Keinan, the general partner of Scintilla Holdings, Ltd., which in turn is general partner of the Fund—asserted that MII committed a default that it did not disclose before entering into the Omnibus Agreement, thereafter MII committed several additional defaults, as a result the conditional waiver was null and void, and the Fund was therefore entitled to take control of and to sell the Yanais’ interests in MII. The Fund removed Yanai as Manager of MII and replaced him with Boaz Toshav. It also made plans to conduct a public sale of the Yanais’ membership interests in MII.
Plaintiffs claim the Fund breached its contracts and the Uniform Commercial Code by improperly declaring a default, exercising rights under the Yanais’ Pledge Agreements, and trying to sell the Yanais’ interests in MII in a manner that was not commercially reasonable and without providing a full accounting of MII’s debts. Plaintiffs also claim that Keinan and Toshav intentionally interfered with the contractual and business relations between Plaintiffs and the  Fund,  claim  that  all  defendants  engaged  in  unfair  trade  practices  in
 
                                                            -1-
 
violation of G.L. c. 93A, and seek various declarations, including that the interest terms of the Omnibus Agreement violate the Massachusetts usury statute. The Yanais assert these claims on their own behalf and in MII’s name.
The Court previously denied Plaintiffs’ request for a preliminary injunction that would have barred the Fund from acting on behalf of MII and barred Toshav from acting as MII’s Manager. The Court allowed the request for a temporary injunction barring any sale of the Yanais’ ownership interests in MII, without prejudice to Defendants seeking reconsideration if they make plans to conduct a commercially reasonable sale.
Keinan, Scintilla Holdings, and the Fund have moved to dismiss all claims against them under Mass. R. Civ. P. 12(b)(6). The Court construes the complaint as asserting the same claims against the Fund as against Scintilla Holdings, even though the complaint did not expressly name the Fund as a defendant.[1]
Plaintiffs have moved for partial judgment on the pleadings declaring that various aspects of the Omnibus Agreement violate the Massachusetts usury statute and reforming that contract to reduce the overall effective interest rate.[2]
 
--------------------------------------------
 
[1] The failure to specify that the Fund is a defendant appears to be inadvertent, given that the Fund is a limited partnership, the Fund (and not Scintilla Holdings) is a party to the contracts at issue, and it is the Fund (and not Scintilla Holdings) that declared a default and purported to exercise its rights under the Yanais’ Pledge Agreements. Indeed, Plaintiffs confirm in their motion for partial judgment on the pleadings that they are seeking relief against the Fund.
 Though Plaintiffs identify the Fund as a limited partnership, it appears that they mistakenly treated it as a general partnership in drafting the complaint. Limited partnerships are “fundamentally different” from general partnerships. Largo Realty, Inc. v. Purcell, 77 Mass. App. Ct. 162, 164 (2010). A limited partnership is a separate legal entity that may be sued in its own name without naming the general partners as defendants. Fusco v. Rocky Mtn. I Investments Ltd. Partnership, 42 Mass. App. Ct. 441, 444–448 (1997). Indeed, since the partners of a limited partnership are not liable for the business’s obligations, the partnership itself must be made a defendant in order to obtain relief against it. Largo Realty, supra, at 164–165. In contrast, a general partnership cannot be “sued in its own name as a legal entity;” one must “sue all the partners” to reach assets of a general partnership. Fusco, supra, at 445-446, 447.
[2]  Under  Massachusetts  law,  it  is  unlawful  to  charge  interest  of  more  than 20 percent annually on any “loan of money or other property” unless advance written notice is provided to the Attorney General. See G.L. c. 271, § 49(a) & (d).
<continued…>
 
                                                            -2-
 
Plaintiffs moved for partial judgment on the pleadings even though no answers have been filed and the deadline for filing answers has not passed.[3]
The Court will allow in part the motion to dismiss by the Scintilla defendants. The Court will dismiss all claims asserted on behalf of MII; it will do so without prejudice, for a variety of reasons, and without resolving whether the Yanais retain authority to bring suit in the name of MII. In addition, the Court will dismiss many but not all of the Yanais’ claims. It will dismiss some without prejudice so that they may be filed in Israel as required by contract, and dismiss others with prejudice because the factual allegations in the verified complaint do not plausibly suggest that the Yanais are entitled to relief on those claims.[4]
Many of Plaintiffs’ claims may not be brought in Massachusetts. The Omnibus Agreement, the Facilities Agreements, and the Side Letter provide that they are governed by the laws of the State of Israel and contain mandatory forum selection clauses that require Plaintiffs to bring claims that arise under or in connection with these contracts before a court in Tel Aviv-Jaffa, Israel. The Court will therefore dismiss without prejudice all claims for breach of or seeking declarations about the Omnibus Agreement, including whether the interest terms of that contract are subject to the Massachusetts usury statute, or
 
--------------------------------------------
If  a  contract  violates this  statute, the  Court  may  either  declare  the parties’ transaction void or reform their contract “to reduce the excessive rate charged to one that is legally permissible.” Begelfer v. Najarian, 381 Mass. 177, 187 (1980), quoting Beach Assocs., Inc. v. Fauser, 9 Mass. App. Ct. 386, 389 (1980).
[3] Plaintiffs correctly note that, in most cases, it would be premature to consider entering judgment on the pleadings where no answer has been filed and the deadline for answering the complaint has not passed. See Mass. R. Civ. P. 12(c) (motion for judgment on the pleadings may be filed “[a]fter the pleadings are closed”); Doe v. United States, 419 F.3d 1058, 1061 (9th Cir. 2005) (motion for judgment on the pleadings may not be submitted “before any answer was filed”); see also Fialkowski v. Baltromitis, 103 Mass. App. Ct. 281, 284–286 (2023) (pleadings are closed, and motion for judgment on pleadings may be filed, if deadline for filing answer has passed and defendant did not seek leave to file answer late). The Court need not reach that issue, however, because it concludes below, in § 1.2 of this decision, that Plaintiffs must bring this part of their claims in Israel.
[4] To survive a motion to dismiss under Mass. R. Civ. P. 12(b)(6), a complaint  must make factual allegations that, if true, would “plausibly suggest … an entitlement to relief.” Lopez v. Commonwealth, 463 Mass. 696, 701 (2012), quoting Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).
 
                                                            -3-
 
seeking declarations about the Facilities Agreements. To the extent the claims for breach of the Pledge Agreement arise from alleged breaches of the other loan documents or otherwise concern the same operative facts, they must also be brought in an appropriate Israeli court. The Court will therefore also dismiss all aspects of the claims for breach of the Pledge Agreement that are based on alleged underlying breaches, or the absence of underlying breaches, of the Omnibus Agreement, the Facilities Agreements, or the Side Letter.
In addition, the Court will dismiss without prejudice MII’s claims the Pledge Agreement because it is not a party to or an intended third-party beneficiary of that contract, and will similarly dismiss MII’s claims to enforce collateral rights under the UCC for lack of standing. The tortious interference claim against Keinan fails because the factual allegations in the complaint do not plausibly suggest that Keinan acted with the personal hostility needed to establish actual malice in a case like this. The Chapter 93A claim against the Scintilla defendants fails because the detailed factual allegations in the complaint establish that these defendants’ alleged misconduct did not occur primarily and substantially in Massachusetts.
The Court will otherwise deny the motion to dismiss with respect to the Yanais’ claims that Defendants violated the Uniform Commercial Code and the Fund breached the Pledge Agreement by trying to sell the Yanais’ membership interests in MII in a manner that was not commercially reasonable, and that the Fund must provide an accounting of the unpaid obligations secured by those membership interests before undertaking any such sale.
The Court will deny Plaintiffs’ motion for partial judgment on the pleadings as moot, because the Yanais and MII must pursue in Israel their claim that the Omnibus Agreement is subject to and violates the Massachusetts usury statute.
1. Mandatory Forum Selection Clauses. With that by way of introduction, let’s turn to the issue of whether Plaintiffs are required to assert their claims in Israel rather than in Massachusetts. The Court concludes that the mandatory forum selection provisions agreed to by MII and Moshe Yanai are enforceable and require that many of the claims in this action be dismissed without prejudice so that they “may be re-filed in the appropriate forum.” See generally Claudio- De Leon v. Sistema Universitario Ana G. Mendez, 775 F.3d 41, 49 (1st Cir. 2014) (dismissals to enforce forum selection clause are without prejudice).
1.1. Summary of Contract Terms. Each Facility Agreement under which the Fund made loans to MII provides that it “is governed by the laws of the State
 
                                                            -4-
 
of Israel” and that courts in Tel Aviv-Jaffa, Israel, shall “have exclusive jurisdiction” to hear and determine any claim by MII “arising out of or in connection” with the Facility Agreement. The forum selection clauses state that they are for the benefit of the Fund, and that the Fund is free to bring suits concerning or to enforce the Facility Agreements elsewhere.[5]
The June 2023 Side Letter, which supplemented and modified the February 2023 Facility Agreement, provides that these two contracts “shall be read and construed as one instrument.” As a result, the forum selection clause in that Facility Agreement governs and applies to the Side Letter.
The December 2024 Omnibus Agreement similarly provided that it and the prior Facility Agreements “shall be read and construed as one instrument.” In addition, as a sort of belt-and-suspenders drafting, the Omnibus Agreement expressly incorporated the choice of law and forum selection provisions of the Facility Agreements. This means that, like the Facility Agreements, the Omnibus Agreement is also governed by the laws of the State of Israel, and that courts in Tel Aviv-Jaffa, Israel, shall have exclusive jurisdiction to hear and determine any claim by MII or by Moshe Yanai “arising out of or in connection with” the Omnibus Agreement.
1.2. Effect on Omnibus Agreement and Facilities Agreement Claims. Moshe Yanai and MII must bring an action in Israel if they wish to press their claims about whether the Omnibus Agreement is subject to the Massachusetts usury statute (G.L. c. 271, § 49) or whether they or the Fund have breached the Omnibus Agreement, the Facilities Agreement, or the Side Letter.[6]
If they are enforceable, the forum selection clauses in these contract documents are mandatory with respect to claims asserted by MII or Yanai that arise from or are in connection with those contracts, because they expressly give courts in
 
--------------------------------------------
 
[5] The Omnibus Agreement and Side Letter are attached to the Complaint as exhibits. The Court may also consider the Facilities Agreements because Plaintiffs refer to these agreements in, and relied upon them in framing, their complaint. See Lanier v. President and Fellows of Harvard College, 490 Mass. 37, 44 (2022) (documents referenced in complaint); Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 45 n.4 (2004) (document relied upon in framing complaint).
[6] Rachel Yanai lacks standing to sue for breach of the Omnibus Agreement’s express terms or its implied covenant of good faith and fair dealing, because she is not a party to or an intended third-party beneficiary of that contract. See the case law and analysis in § 2.1 of this decision, below.
 
                                                            -5-
 
Israel exclusive jurisdiction over those claims. See Boland v. George S. May Intern. Co., 81 Mass. App. Ct. 817, 824 (2012).
Whether these clauses are enforceable is governed by Israeli law, because the choice of law provisions state that the contracts are governed by Israeli law. See Melia v. Zenhire, 462 Mass. 164, 168 (2012). Where parties to a contract “have expressed a specific intent as to the governing law, Massachusetts courts will uphold the parties’ choice as long as the result is not contrary to public policy.” Oxford Global Resources, LLC v. Hernandez, 480 Mass. 462, 468 (2018), quoting Hodas v. Morin, 442 Mass. 544, 549–550 (2004). Under the applicable factors, upholding the parties’ choice of Israeli law would not be contrary to public policy, and therefore the contractual choice-of-law provisions control.[7]
 
--------------------------------------------
 
[7] Massachusetts courts will disregard the parties’ choice of law as being contrary to public policy if, and only if, “(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) [where] application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state [in the determination of the particular issue]’ and is the State whose law would apply ... ‘in the absence of an effective choice of law by the parties.” Oxford Global Resources, 480 Mass.  at 468–469 (bracketed material in original), quoting Restatement (Second) of Conflict of Laws § 187(2) (1971).
 The parties’ choice of law provisions survive the first prong of this test because the facts alleged in the Complaint establish that Israel has a “substantial relationship” to the transaction. Plaintiffs essentially conceded this point in their memoranda and during oral argument. Which makes good sense. The Yanais are Israeli citizens who reside in Israel. Although their company MII is a Massachusetts LLC with a business address in Brookline, Massachusetts, the verified complaint establishes that MII obtained loans from an Israeli lender (the Fund) through contracts that were executed in Israel and used the proceeds to invest in privately-held Israeli high-tech companies.
 The choice-of-law clauses also survive the second prong of this test. Plaintiffs contend that the law of Israel is materially different from the Massachusetts usury statute and therefore is contrary to a fundamental policy of Massachusetts. Nonetheless, the Court finds that Massachusetts does not have a materially greater interest than Israel in the resolution of Plaintiffs’ claims, including with respect to whether the Omnibus Agreement imposes usurious interest, because this dispute concerns loans of money in Israel by an Israeli lender to a borrower that was controlled by Israeli citizens and residents, doing
<continued…>
 
                                                            -6-
 
Neither side contends that Massachusetts law differs from Israeli law with respect to enforcing forum selection clauses, however. To the contrary, all parties refer to Massachusetts law and provide no information about Israeli law with respect to the effect of a forum selection clause. The Court may therefore apply Massachusetts law in deciding that issue without conducting any choice of law analysis. “Only actual conflicts between the laws of different jurisdictions must be resolved.” UBS Financial Services, Inc. v. Aliberti, 483 Mass. 396, 405 n.12 (2019), quoting Kaufman v. Richmond, 442 Mass. 1010, 1012 (2004) (rescript). “Choice of law analysis is unnecessary when that choice will not affect the outcome of the case.” Kaufman, supra.
Under Massachusetts law “forum selection clauses are to be enforced if it is fair and reasonable to do so.” Jacobson v. Mailboxes Etc. U.S.A., Inc., 419 Mass. 472, 574-575 (1995); accord Taylor v. Eastern Connection Operating, Inc., 465 Mass. 191, 193 (2013). “The opponent of a forum selection clause bears the ‘substantial burden’ of showing that enforcement of a forum selection clause would be unfair and unreasonable.” Melia, 462 Mass. at 182, quoting Cambridge Biotech Corp. v. Pasteur Sanofi Diagnostics, 433 Mass. 122, 133 (2000). To meet that burden, “[a] party resisting the enforcement of a forum selection clause must establish that ‘trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.’ ” Boland v. George S. May International Co., 81 Mass. App. Ct. 817, 820 (2012), quoting The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 18 (1972).
Plaintiffs have not shown that they cannot fairly press claims that arise from or are connected to their contracts with the Fund in an Israeli court; it is therefore “just and reasonable” to require Plaintiffs to bring those claims in Israel. See Cambridge Biotech,  supra,  at 133. Plaintiffs are mistaken  when they  assert that
 
--------------------------------------------
 
business  through  its  Manager  in  Israel,  and  using  the  proceeds  to  fund investments in other Israeli businesses. Furthermore, the Court also finds that Israeli law would govern these contracts in the absence of the choice-of-law provisions because, for the same reasons, Israel “has the most significant relationship to the transaction and to the parties.” Oxford Global Resources, supra at 467, quoting Restatement, supra, at § 188(2).
 Although the Court concludes that there is no basis to set aside the parties’ adoption of a choice-of-law provision stating that Israeli law governs that contract, it cannot enter judgment as to whether the Omnibus Agreement is subject to and violates the Massachusetts usury statute because, under the forum selection clauses, that claim may only be asserted in an Israeli court.
 
                                                            -7-
 
the Court previously ruled that they may bring this entire lawsuit in Massachusetts notwithstanding the forum selection clauses.[8]
It makes no difference that the forum selection clauses are mandatory as to MII and Yanai but permissive as to the Fund. As noted above, these provisions require that MII and Yanai bring suit in Israel to press any claim “arising out of or in connection” the Facility Agreements, the Side Letter, or the Omnibus Agreement. At the same time, the provisions make clear that the Fund is free to bring such claims either in Israel or elsewhere.
There is nothing unconscionable about the one-way or unilateral nature of the mandatory forum selection clauses in the loan contracts. See Montoya v. Financial Federal Credit, Inc., 872 F.Supp.2d 1251, 1277 (D.N.M. 2012); see also Superior Nut & Candy Co., Inc. v. TDG Brands, Inc., 2017 WL 319149, at *2 (N.D. Ill. Jan. 23, 2017); Oxysure Therapeutics, Inc. v. Gemini Master Fund, Ltd., 2016 WL 4083241, at *5 (E.D. Tex. July 8, 2016). A lender like the Fund may reasonably require the borrower to bring suit in the lender’s home forum, while reserving itself the right to sue elsewhere, which it might need to do to pursue assets or collateral if the borrower were to default. Montoya, supra.
Since the forum selection provisions are enforceable, the Court must dismiss without prejudice Plaintiffs’ claims that the Fund breached the Omnibus Agreement (count II) and an implied covenant of good faith and fair dealing that allegedly is part of that contract (part of count IV). The Court must also dismiss those parts of the declaratory judgment claim (count VIII) that seek resolution of whether MII was in default under the Facilities Agreements or the Omnibus Agreement, whether MII breached those contracts by selling any of its shares in eToro Group Ltd., whether the Fund breached the Facilities Agreements or the Omnibus Agreement, and whether any terms of the Omnibus Agreement violate the Massachusetts usury statute, G.L. c. 271, § 49.
Courts in Israel are fully capable of fairly applying choice-of-law principles, giving  “effect  to  Massachusetts  fundamental  public  policy,”  and applying
 
--------------------------------------------
 
[8] In its preliminary injunction decision, the Court ruled only that the forum selection provisions in the Facilities Agreements did not bar all of Plaintiffs’ claims under or relating to enforcement of the Pledge Agreement. It did not address whether these provisions bar Plaintiffs’ separate claims under or concerning the Omnibus Agreement and the Facilities Agreements, or whether there might be some aspect of the Pledge Agreement claims that may only be asserted in an Israeli court.
 
                                                            -8-
 
Massachusetts law where appropriate. See Melia, 462 Mass. at 182 (enforcing forum selection clause over objection that New York courts could not be trusted to adjudicate Massachusetts Wage Act claim). “International comity requires” that the Court respect the ability of Israeli courts fairly and competently to resolve any issues that may be raised if Plaintiffs choose to refile some of their current claims in Israel. See Cambridge Biotech, 433 Mass. at 133 (enforcing forum selection clause requiring claims to be brought in France).
1.3. Effect on Other Claims. Under the forum selection clauses, Plaintiffs must also file suit in Israel to press their claims that the Fund breached the Pledge Agreement by exercising the Yanais’ voting rights and installing Toshav as Manager (as alleged in ¶¶ 74(a)–(f) of the Complaint), but the Yanais may continue to press in this forum their claims that the Fund committed a distinct breach of the Pledge Agreement’s express and implied terms, the Scintilla defendants breached the UCC, and the Scintilla defendants were required to provide an accounting of the debt and collateral before trying to sell the Yanai’s membership interests in MII. (As discussed below, the Court will dismiss the other claims by MII, as well as the claims that the Scintilla defendants and Keinan violated G.L. c. 93A and that Keinan committed tortious interference, even though they are not subject to the mandatory forum selection clauses.)
To the extent that Plaintiffs’ claims for breach of the Pledge Agreement are based on allegations that the Fund was not entitled to exercise any rights under the Pledge Agreement, because MII allegedly committed no underlying breach of contract that was not waived in the Omnibus Agreement, those claims arise from the Fund’s alleged breach of the Omnibus Agreement and therefore fall within the scope of that contract’s forum selection clause.
In any case, those parts of Plaintiffs’ claims under the express or implied terms of the Pledge Agreement “involve the same operative facts” as their claims under or concerning the Omnibus Agreement; as a result, those claims must also “be heard in the forum selected by the parties,” i.e. in Israel. See Cambridge Biotech, 433 Mass. at 130 n.7; accord Lambert v. Kysar, 983 F.2d 1110, 1112 (1st Cir. 1993) (“contract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties”). “This is the only sensible outcome when the related cause of action is not only related to, but dependent upon” , the cause of action that is subject to a mandatory forum selection provision. Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 24 (1st Cir. 2009).
 
                                                            -9-
 
During oral argument Plaintiffs suggested that, since the Pledge Agreements do not have a mandatory forum selection clause, they should be able to press claims for breach of those contracts as well as any related issues arising under the Omnibus Agreement and other loan contracts in Massachusetts. This has it backwards. The mandatory forum selection clauses in the other contracts sweep in claims under the Pledge Agreements that arise under the same operative facts.
In contrast, the claims under the UCC and c. 93A, for tortious interference, and for breach of the Pledge Agreement with respect to the Fund’s efforts to sell the Yanais’ ownership interests in MII do not arise from the prior loan contracts and do not involve the same operative facts as the claims arising under those agreements. As a result, those claims are not subject to the mandatory forum selection clauses. Cf. Merrimack v. KPMG, 88 Mass. App. Ct. 803, 804–807 (2016) (provision requiring arbitration of all claims “arising out of or relating to” particular contract did not apply to claims for breach of “wholly separate” contracts ).
2. Pledge Agreement Claims. Plaintiffs assert five claims that at least in part concern the Fund’s efforts to exercise its rights under the Pledge Agreements: a claim in count three for breach of the express contract terms; a claim in count four for breach of the implied covenant of good faith and fair dealing; a claim in count one that the Fund violated the Uniform Commercial Code by trying to sell the Yanais’ membership interests in MII in a manner that was not commercially reasonable; a claim in count seven that under the UCC the Fund must account for all indebtedness before seeking to sell this collateral; and a claim in count eight for declaratory judgment. The Court concludes that MII lacks standing to bring these claims, but that the Yanais may pursue them on their own behalf.
2.1. MII’s Pledge Agreement Claims. The Pledge Agreements were the means by which the Yanais pledged their ownership interests of MII as security for MII’s loan obligations. MII was not a party to either Pledge Agreement. These contracts did not affect MII’s existing contractual or other legal rights or obligations, and did not give MII any new rights or impose any new obligations upon MII.
As a general matter, a person or entity that is not a party to a contract has no standing to enforce the contract. See Sullivan v. Kondaur Capital Corp., 85 Mass. App. Ct. 202, 205 (2014). Since MII is not a party to the Pledge Agreements, and
 
                                                            -10-
 
the facts alleged in the complaint do not suggest that MII has a right to enforce these contracts on any other basis, its claims for breach of those contracts must be dismissed for lack of standing. See, e.g., Kessler v. Cambridge Health Alliance, 62 Mass. App. Ct. 589, 593 (2004) (affirming dismissal).
While there is an exception for intended third-party beneficiaries, the Pledge Agreements do not confer such status because there is no “clear and definite” indication that the contracting parties intended not only that MII would benefit from each Pledge Agreement, but also that MII “could enforce it.” See Landry v. Transworld Systems, Inc., 485 Mass. 334, 342 (2020); accord Lakew v. Mass. Bay Transp. Auth., 65 Mass. App. Ct. 794, 799 n.10 (2006) (“contracting parties may well intend that a third party receive a benefit as a result of their contract but not intend to confer on the third party a right to enforce the contract.”). Nothing in the language of the Pledge Agreements or the circumstances alleged in the complaint suggests that the parties intended to give MII the right to bring suit to enforce the Pledge Agreements.
For much the same reason, MII has no standing to join in the claims that the planned sale of the Yanais’ membership interests violated the UCC because it was not commercially reasonable, or that under the UCC the Fund had to provide an accounting of MII’s indebtedness before selling the membership interests that the Yanais posted as collateral. A plaintiff has standing to sue if the defendant owed a legal duty to the plaintiff, breached that duty, and the plaintiff suffered some injury as a result. See Sullivan v. Chief Justice for Admin. & Mgmt. of the Trial Court, 448 Mass. 15, 22-23 (2007). MII cannot bring suit to enforce the Yanais’ rights under the pledge agreements. See Massachusetts Coalition for the Homeless v. City of Fall River, 486 Mass. 437, 447 (2020) (“litigants only have standing to assert their own rights and not the rights of others”).
The Court will therefore dismiss these claims on behalf of MII without prejudice. See Abate v. Fremont Inv. & Loan, 470 Mass. 821, 836 (2015) (“Dismissals for lack of subject matter jurisdiction are ordinarily without prejudice because dismissal for lack of jurisdiction is typically not an adjudication on the merits.”).
2.2. The Yanais’ Pledge Agreement Claims. In contrast, defendants have not shown that there is any basis for dismissing the Yanais’ own claims under or related to the Pledge Agreement, to the extent that those claims do not arise from MII’s loan agreements with the Fund and do not involve the same operative facts as the claims arising from or concerning those other contracts.
 
                                                            -11-
 
2.2.1. The Complaint Does Not Establish that MII was In Default. There is no merit to Defendants’ assertion that the allegations of the complaint establish that MII was in default, as a result the Fund was entitled to exercise its rights under the Pledge Agreements, and therefore Plaintiffs cannot press claims under the Pledge Agreements’ express terms or under their implied covenant of good faith and fair dealing.
Plaintiffs allege in their verified complaint, in ¶ 37 and ¶ 40, that the Fund knew before it executed the Omnibus Agreement that MII had sold more eToro shares in December 2024 without paying the proceeds over to the Fund. Assuming those allegations are true, this blatant breach of the Side Letter was disclosed to the Fund and therefore was conditionally waived in the Omnibus Agreement.[9] And nothing alleged in the complaint establishes any subsequent breach by MII or Moshe Yanai. Defendants’ assertion that the Court “has already determined” that the Fund was entitled to exercise the Yanais’ voting rights in MII is unavailing.[10]
 
--------------------------------------------
 
[9] It is troubling that the Yanais continue to argue that MII was not required to  pay to the Fund all proceeds from MII’s December 2024 sale of eToro shares, because the Fund did not provide written notice within five days that it was invoking that right under the “mandatory prepayment on disposal” clause in the Facilities Agreements. (See Plaintiffs’ Opposition at 3 & 17.) As the Court explained in its preliminary injunction decision, this provision was superseded by the June 2023 Side Letter, which provided that going forward MII was required to apply the “full proceeds of any sale” of shares in eToro Group Ltd. without need for any further written notice. Though Plaintiffs incorrectly describe MII’s contractual obligations after the Side Letter in their complaint, their inaccurate legal assertions about unambiguous written contracts are irrelevant, including in deciding a motion to dismiss. See, e.g., Eigerman v. Putnam Investments, Inc., 450 Mass. 281, 287 (2007). Plaintiffs’ continued insistence that written notice was required in December 2024 before MII had any obligation to pay its eToro proceeds to the Fund at best reflects a grave misunderstanding of the plain language of the Side Letter, combined with a surprising disregard of the Court’s preliminary injunction decision; at worst it reflects a deliberate attempt to mislead the Court.
[10] Defendants are referring to findings that the Court made in deciding Plaintiffs’ first motion for a preliminary injunction, based on an evidentiary record that included far more than just the Verified Complaint, that the Fund did not learn until mid-January 2025 that MII sold eToro shares the prior month, and that MII then committed additional breaches of the Omnibus Agreement. None of
<continued…>
 
                                                            -12-
 
2.2.2. Implied Covenant Claim. Defendants’ further argument that the implied covenant of good faith and fair dealing does not create substantive rights beyond those provided within the express terms of the contract is a correct statement of the law, but it provides no ground for dismissing Plaintiffs’ claim for breach of the implied covenant in the Pledge Agreement.
A party to a contract may simultaneously commit “a breach of both the express terms of the contract and the implied covenant of good faith and fair dealing.” See Hlatky v. Steward Health Care System, LLC, 484 Mass. 566, 567–568 (2020). The facts alleged in the complaint plausibly suggest that the Fund violated its contractual and statutory duty to act in good faith in exercising its rights under the Pledge Agreement, by trying to create an essentially sham sales process to enable the Fund to acquire MII as the sole bidder for the Yanais’ membership interests. See generally Weiler v. PortfolioScope, Inc., 469 Mass. 75, 82 (2014) (every contract governed by Massachusetts law includes an implied covenant of good faith and fair dealing, which provides “that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract”); G.L. c. 106, § 1-304 (“every conduct or duty” under the Massachusetts UCC “imposes an obligation of good faith in its performance and enforcement”).
2.2.3. UCC and Accounting Claims. Thought the Court temporarily enjoined the Fund’s planned sale of the Yanais’ membership interests in MII, that does not moot the claims that the planned sale would violate the commercial reasonableness requirements of the Massachusetts Uniform Commercial Code or that under G.L. c. 106, § 9-210, the Yanais are entitled to an equitable accounting before the Fund may undertake such a sale.
 
--------------------------------------------
 
that is relevant here. In deciding the Scintilla defendants’ motion to dismiss under Rule 12(b)(6), the Court must assume that the facts alleged in the complaint are true and must draw “every reasonable inference” in favor of Plaintiffs from those allegations. Rafferty v. Merck & Co., Inc., 479 Mass. 141, 147 (2018). The Court may not consider additional evidence in the preliminary injunction record about disputed matters that are not alleged in the complaint. See General Motors Acceptance Corp. v. Abington Cas. Ins. Co., 413 Mass. 583, 584 (1992) (materials outside the pleadings generally may not be considered in reviewing rule 12(b)(6) motion); Cannonball Fund, Ltd. v. Dutchess Capital Management, LLC, 84 Mass. App. Ct. 75, 91, rev. denied, 466 Mass. 1106 (2013) (in deciding rule 12(b)(6) motion, as in other contexts, “[m]atters are judicially noticed only when they are indisputably true”) (quoting Nantucket v. Beinecke, 379 Mass. 345, 352 (1979)).
 
                                                            -13-
 
During oral argument, the Scintilla defendants represented that they have now provided such an accounting. That may be. But whether any further accounting is required cannot be resolved on a motion to dismiss.
3. Tortious Interference Claim against Keinan. The tortious interference claim against Keinan must be dismissed because nothing in the complaint plausibly suggests that he was acting out of personal hostility toward the Yanais or MII. The Court will dismiss the Yanais’ interference claim against Keinan with prejudice, and dismiss MII’s identical claim without prejudice.
3.1. The Yanais’ Interference Claim. To state a viable claim against Keinan for intentional interference with contractual relations, the Yanais must make factual allegations plausibly suggesting that that: “(1) [they] had a contract with a third party; (2) the defendant knowingly induced the third party to break that contract; (3) the defendant’s interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions.” Weiler, 469 Mass. at 84, quoting G.S. Enters., Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 272 (1991). Thus, the alleged interference must be “accompanied by improper motive or improper means; the plaintiff need not prove [or allege] both” (emphasis in original). Kurker v. Hill, 44 Mass. App. Ct. 184, 191 (1998).
In addition, in a case like this where “the defendant is a corporate official acting in the scope of his corporate responsibilities, a plaintiff has a heightened burden” of proving that “the improper motive or means constituted ‘actual malice,’ that is, ‘a spiteful, malignant purpose, unrelated to the legitimate corporate interest.’ ” Psy-Ed Corp. v. Klein, 459 Mass. 697, 716 (2011), quoting Blackstone v. Cashman, 448 Mass. 255, 260–261 (2007), and Wright v. Shriners Hosp. for Crippled Children, 412 Mass. 469, 476 (1992). In other words, to state a claim for intentional interference against an official of a business entity, a plaintiff must allege facts plausibly suggesting that the official “was personally hostile or harbored ill will toward the plaintiff.” Sklar v. Beth Israel Deaconess Med. Ctr., 59 Mass. App. Ct. 550, 554 (2003); accord Weber v. Community Teamwork, Inc., 434 Mass. 761, 783 (2001) (“behavior must rise to the level of personal hostility or ill-will to satisfy the actual malice standard”).
“[T]he ‘actual malice’ standard for proving improper motive or means on the part of a corporate official is a heightened burden placed on the plaintiff, not a defense that must be proved by a defendant.” Blackstone, 448 Mass. at 261 n.10. As a result, if a plaintiff does not make factual allegations that plausibly suggest
 
                                                            -14-
 
that a corporate official was acting with the personal hostility required to show actual malice, the complaint fails to state a viable claim against them for tortious interference and any such claim should be dismissed. See Kelleher v. Lowell Gen. Hosp., 98 Mass. App. Ct. 49, 56 (2020) (affirming dismissal).
The verified complaint in this case adequately addresses the first four elements of this claim against Keinan if one ignores actual malice, because it alleges facts plausibly suggesting that: (I) the Yanais had contracts with the Fund; (ii) Keinan knowingly induced the Fund to breach its contractual obligations to the Yanais by working with MII to sell off the Yanais’ membership interests through a process that does not come close to being commercially reasonable; (iii) Keinan had the improper motive of trying to create an essentially sham sales process to enable the Fund to acquire MII as the sole bidder; and (iv) the Yanais were harmed as a result.
However, nothing in the complaint plausibly suggests that Keinan was acting out of any personal hostility toward the Yanais. Instead, the complaint alleges that Keinan was motivated by a desire to further the Fund’s economic interests. It is well-established that “advancing one’s own economic interest, by itself, is not an improper motive” for the purpose of a tortious interference claim. See Skyhook Wireless, Inc. v. Google Inc., 86 Mass. App. Ct. 611, 621 (2014). Similarly, a desire by a corporate officer or the manager of a limited liability company to advance the company’s economic interests does not rise to the level of “actual malice” as a matter of law. King v. Driscoll, 418 Mass. 576, 587 (1994) (evidence that employee was terminated so that company could buy back his stock held insufficient to establish actual malice and improper interference).
Since the complaint does not plausibly suggest that Keinan was acting with actual malice, the Court must order that this claim by the Yanais be dismissed with prejudice. See  generally  Saade  v.  Wilmington  Trust,  National  Ass’n,  494 Mass. 1193, 1194 (2024) (rule 12(b)(6) dismissal “operates as a dismissal on the merits” and has “res judicata effect”) (quoting Mestek, Inc. v. United Pacific Ins. Co., 40 Mass. App. Ct. 729, 731, rev. denied, 423 Mass. 1108 [1996]).
3.2. MII’s Interference Claim. The Court will dismiss the interference claim by MII against Keinan without prejudice because there is an open question as to whether the Yanais have the power to assert any claims on MII’s behalf. If they do not, then it would be improper to dismiss with prejudice a claim by MII that the Yanais lack authority to bring in the first place. The Court cannot definitively resolve this this issue at this stage of the litigation.
 
                                                            -15-
 
The Pledge Agreements provide that if there is an Event of Default under the Facility Agreements then the Yanais’ “voting and other consensual rights” as Members of MII will become “vested in” the Fund, which will “then have the sole right to exercise” such rights. And the subsequent Omnibus Agreement provides that any breach of that contract’s terms would constitute an immediate Event of Default under each Facility Agreement. But the Omnibus Agreement also included a conditional waiver of any prior breaches known to the Fund as of December 31, 2024, that would remain in effect unless and until there was a subsequent breach of the Omnibus Agreement.
Contrary to the Scintilla defendants’ argument, the complaint does not establish that the Yanais lost any power to exercise their voting rights as MII members in late January 2025, when the Fund purported to invoke rights under the Pledge Agreement to take control of the Yanais’ voting and consensual rights. Instead, as discussed above in § 2.2.1 of this decision, the Complaint alleges that the Fund committed a breach of contract by doing so.
If there was an Event of Default that triggered the Fund’s right under the Pledge Agreements to exercise the Yanais’ voting and consensual rights in the Fund, and the Fund gave notice that it was exercising those rights, the Yanais would no longer have any authority to bring suit on behalf of MII. Members of a Massachusetts limited liability company like MII may “vote” to bring suit in the name of the LLC. See G.L. c. 156C, § 56. It follows that if the Yanais lost the power to exercise their voting rights, then they could no longer bring suit in MII’s name. The Yanais’ argument to the contrary is without merit.
But if no Event of Default triggered the Fund’s ability to exercise the Yanais’ voting rights, as the Yanais allege in their complaint, then the Yanais may continue to exercise their voting rights and, since together they hold 100 percent of the membership interests in MII, they would have been within their rights to bring suit on behalf of and in the name of MII. See G.L. c. 156C, § 56(a). Moshe and Rachel are the only members of MII, and they implicitly authorized this lawsuit by filing their complaint. See Billings v. GTFM, LLC, 449 Mass. 281, 289 & n.18 (2007). The Scintilla defendants’ argument that the holding in Billings n.18 does not apply here is without merit.
The facts alleged in the complaint plausibly suggest that there has been no event of default under the loan agreements other than prior breaches that the Fund conditionally waived in the Omnibus Agreement, as a result the Yanais may continue to exercise their voting and other consensual rights as Members
 
                                                            -16-
 
of MII, and therefore they were free to bring this suit not only on their own behalf but also on behalf of MII.
The Scintilla defendants’ further argument that the Yanais cannot sue on behalf of MII because their interests “are not aligned with MII’s” is not something that can be determined in deciding the motion to dismiss. The Court recognizes that, by statute, an LLC member “who has an interest in the outcome of the suit that is adverse to the interest of the limited liability company” may not participate in deciding whether the members should bring suit on behalf of the LLC. See G.L. c. 156C, § 56(a). But nothing alleged in the Complaint establishes that the Yanais’ interests are adverse to those of MII.
Therefore, in the exercise of its discretion, the Court will dismiss MII’s tortious interference claim against Keinan without prejudice, so that MII may pursue the claim on its own if it chooses to do so. Cf. Iannacchino v. Ford Motor Co., 451 Mass. 623, 635 (2008) (appropriate to dismiss claim without prejudice on rule 12(b)(6) motion if it is appropriate to give plaintiff an opportunity to file a revised complaint); Ogens v. Northern Indus. Chemical Co., 304 Mass. 401, 403 (1939)  (court  has  discretion  to  dismiss   claim  without   prejudice  where  “a decision on the merits cannot be made with justice to the parties”).
4. Chapter 93A Claim. Defendants contend that the complaint does not state a viable claim against Scintilla Holdings, the Fund, or Keinan under G.L. c. 93A, § 11, because the allegations in the verified complaint establish that none of their “alleged conduct occurred within the Commonwealth.” The Court agrees.
Section 11 applies only where “the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred primarily and substantially within the commonwealth.” G. L. c. 93A, § 11. “ “If the actions and transactions did not occur primarily and substantially within Massachusetts,” then a defendant “cannot be liable” under § 11. FTI, LLC v. Duffy, 104 Mass. App. Ct. 484, 488, review denied, 495 Mass. 1103 (2024).
“The analysis required under § 11 does not turn on any specific factors and instead involves determining whether the center of gravity of the circumstances that g[a]ve rise to the claim’ occurred here.” Id., quoting Kuwaiti Danish  Computer  Co.  v.  Digital  Equip.  Corp.,  438  Mass.  459,  473  (2003).   To determine the center of gravity, a court should look “only to the allegedly unscrupulous conduct” and consider all the relevant circumstances, include where the misconduct and where the loss occurred. Skyhook Wireless, Inc. v. Google, Inc., 86 Mass. App. Ct. 611, 622 (2014).
 
                                                            -17-
 
The burden of proof will be on the Defendants to prove that their allegedly unfair or deceptive conduct did not occur primarily and substantially in Massachusetts. See G.L. c. 93A, § 11; Kuwaiti Danish Computer, 438 Mass. at 470 & n.11. As a result, whether alleged misconduct has sufficient connection to Massachusetts to implicate c. 93A, § 11, usually cannot be resolved on a motion to dismiss, “at least where” the complaint plausibly suggests that “the loss occurred in Massachusetts.” See Resolute Mgmt., Inc. v. Transatlantic Reins. Co., 87 Mass. App. Ct. 296, 300–301 (2015) (reversing dismissal of claim under G.L. c. 93A, § 11).
Nonetheless, in this case the detailed allegations of the complaint, including the information contained in the documents referenced in the complaint, establish that the center of gravity of the alleged misconduct by Scintilla Holdings, the Fund, and Keinan did not take place in Massachusetts.
“The purpose of rule 12(b)(6) is to permit prompt resolution of a case where the allegations in the complaint clearly demonstrate that the plaintiff’s claim is legally insufficient.” Harvard Crimson, Inc. v. President and Fellows of Harvard Coll., 445 Mass. 745, 748 (2006). Where a complaint sets out “detailed factual allegations which the plaintiff contends entitle him to relief,” a claim may be dismissed if those allegations “clearly demonstrate that plaintiff does not have a claim.” Fabrizio v. City of Quincy, 9 Mass. App. Ct. 733, 734 (1980) (affirming dismissal); accord Nguyen v. Univ. of Mass., 66 Mass. App. Ct. 276, 277 (2006) (affirming dismissal).
For this reason, “[i]f it is evident from the allegations of the complaint alone that the defendant is entitled to [an affirmative defense], the matter may be decided by means of a motion to dismiss” (bracketed material in original). Fleming v. Nat'l Union Fire Ins. Co., 445 Mass. 381, 389–390 (2005), quoting Gutierrez v. Mass. Bay Transp. Auth., 437 Mass. 396, 404 (2002).
The facts alleged in the complaint make clear that none of the alleged misconduct by Scintilla and Keinan occurred in Massachusetts. The Complaint establishes the following.[11] The Scintilla entities are based in Israel and are managed  by  Keinan in Israel.  The  Fund’s  alleged  misconduct in  sending a
 
--------------------------------------------
 
[11]    The Yanais are bound by the factual allegations in their verified complaint. See
G.L. c. 231, § 87 (“In any civil action pleadings … shall bind the party marking them.”); Adiletto v. Brockton Cut Sole Corp., 322 Mass. 110, 112 (1947) (this statute provides that “facts admitted in pleadings” are “conclusive upon” the party making them).
 
                                                            -18-
 
notice of default to the Yanais, exercising the Yanais’ voting rights as members of MII, and appointing Toshav as manager all took place in Israel, where Scintilla and Keinan are located and do business. Scintilla’s alleged misconduct in participating in contacting MII’s accountants, banks, and portfolio companies all took place outside of Massachusetts. The alleged misconduct in noticing a public sale of the Yanais’ membership interests in MII took place in New York City and Israel, according to the complaint.
Furthermore, any injury to the Yanais as a result of the Fund’s actions occurred in Israel; the complaint makes clear that is where the Yanais reside and from where Moshe Yanai had been running MII’s business.
Although MII is a Massachusetts limited liability company that maintains a business address in Massachusetts, that factor alone cannot make a difference either to the Yanais’ c. 93A claim (because none of their alleged injury was incurred in Massachusetts) or to MII’s claim (because the other factual allegations in the complaint establish that none of the alleged misconduct by Keinan and the Scintilla entities took place in Massachusetts). Compare Evergreen Partnering Group, Inc. v. Pactiv Corp., No. 11-CV-10807-RGS, 2014 WL 304070, at *4 (D. Mass. Jan. 28, 2014) (Stearns, J.) (dismissing c. 93A claim by plaintiff incorporated and with principal place of business in Massachusetts because detailed factual allegations in complaint showed center of gravity of alleged misconduct was in other States); see also HC&D, LLC v. Precisions NDT & Consulting LLC, No. 22-CV-10224-ADB, 2024 WL 4626223, at *7 (D.Mass. Oct. 30, 2024) (Burroughs, J.) (dismissing c. 93A claim against defendant incorporated and headquartered in Massachusetts because complaint made clear that alleged misconduct occurred elsewhere).
In sum, this is the unusual case in which detailed allegations in a verified complaint establish that the center of gravity of defendants’ alleged misconduct is outside of Massachusetts, none of defendants’ alleged misdeeds took place in Massachusetts, and therefore defendants need not present any additional evidence to meet their burden of proving that their alleged misconduct did not occur primarily and substantially in Massachusetts and thus is not subject to challenge under G.L. c. 93A, § 11.
For the reasons discussed above in connection with the tortious interference claim, the Court will dismiss Yanais’ c. 93A claim against these defendants with prejudice, and will dismiss MII’s claim without prejudice.
 
                                                            -19-
 
ORDERS
The motion to dismiss filed by Zack Keinan, Scintilla Holdings, Ltd., and Scintilla Fund, L.P. (docket no. 78) is allowed in part as follows. First, all claims asserted on behalf of Michal International Investment LLC shall be dismissed without prejudice. Second, the claims by Moshe Yanai and Rachel Yanai asserted in count two, ¶¶ 74(a)–(f) of count three, so much of count four that concerns the Omnibus Agreement, and ¶¶ 103(a)–(f) and ¶¶ 103(h)–(l) of count eight of the complaint shall also be dismissed without prejudice. Third, the claims by Moshe Yanai and Rachel Yanai in count five against Zack Keinan, Scintilla Holdings, Ltd., and Scintilla Fund, L.P., under G.L. c. 93A, and in count six against Zack Keinan for tortious interference, shall be dismissed with prejudice.
This motion to dismiss is denied in part with respect to the claims by Moshe Yanai and Rachel Yanai in count one, ¶ 74(g) of count three, so much of count four that concerns the implied covenant of good faith and fair dealing in the Pledge Agreements, count seven, and ¶ 103(g) of count eight of the complaint.
Plaintiffs’ motion for partial judgment on the pleadings (docket no. 70) is denied as moot.
The session clerk shall schedule an initial Rule 16 scheduling conference to set a case schedule for the surviving claims.